# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## People's Building, Loan and Saving Association, Appellant, v. Berlin.

201   1
201   9

201      1
20 SC  399

201    1
41SC 125

*Corporations—Foreign corporations—Building and loan associations—Doing business—Bond and mortgage—Usury.*

A foreign building and loan association having its office in the state of its domicile, where under its articles of association and by-laws, its business must be conducted, and at which office all payments must be made to it, and all contracts passed upon, does not, in making a loan to a citizen of Pennsylvania on a bond, through an agent in Pennsylvania, and taking as security for the debt a mortgage on Pennsylvania real estate, make a Pennsylvania contract governed by the usury laws of this state; nor is the association doing business in Pennsylvania within the meaning of the act of April 22, 1874, requiring the registration of foreign corporations. In such a case there is no employment by the association of any part of its capital in Pennsylvania. The capital, if employed in Pennsylvania, is employed by a citizen of Pennsylvania. Swing v. Munson, 191 Pa. 582, distinguished.

Argued May 7, 1901. Appeal, No. 80, Jan. T., 1901, by plaintiff, from judgment of Superior Court, Oct. T., 1899, No. 213, reversing judgment of C. P. McKean Co., Feb. T., 1896, No. 193, on case tried by court without a jury in suit of People's Building and Loan Association v. George T. Berlin and Sarah E. Berlin. Before McCollum, C. J., Mitchell, Fell, Brown and Potter, JJ. Reversed.

Appeal from Superior Court. See 15 Pa. Superior Ct. 393.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*Chester M. Elliott* and *E. R. Mayo*, with them *G. B. Mayo*, for appellant.—There was no doing of business in Pennsylvania : Mearshon & Co. v. Pottsville Lumber Co., 187 Pa. 12 ; Clark on Corporations, 625 ; Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184.

Where a contract is made by correspondence through the mails it is of the place where the party receiving the proposition puts into the mail his answer accepting it, or does an equivalent act, and generally, " the place of payment or performance is the place of the contract : " Mills v. Wilson, 88 Pa. 118 ; Hyde v. Goodnow, 3 N. Y. 266 ; Holder v. Aultman, 169 U. S. 81 ; 2 Parsons on Notes and Bills, 324.

The appellant was not doing business in Pennsylvania within the meaning of the act : Kilgore v. Smith, 122 Pa. 48 ; Leasure v. Union Mut. Life Ins. Co., 91 Pa. 491 ; Cæsar et al. v. Capell, 83 Fed. Repr. 403 ; Eastern Building & Loan Assn. v. Bedford, 88 Fed. Repr. 7.

The contract was not usurious under the laws of the state of New York ; Laws of New York of 1851, chap. 122, sec. 7, and of 1875, chap. 564, sec. 1.

*George A. Berry*, with him *Robert L. Edgett* and *Edwin E. Tait*, for appellees.—The act of April 22, 1874, which requires every corporation undertaking to do business in the state of Pennsylvania to establish an office and appoint an agent, etc., is mandatory. When a foreign corporation does not comply with the 2d section of the act, its business transactions are illegal and all contracts pertaining to it are unlawful : Citizens' Trust & Surety Co. v. McCanna & Frazer Co., 6 Pa. Dist. Rep. 25 (U. S. Circuit Court of Appeals).

The employment of a portion of the capital of a foreign corporation doing a building and loan business, in making loans within the commonwealth of Pennsylvania, such loans being secured by mortgages on real estate in Pennsylvania, is a doing of business within the state of Pennsylvania, within the meaning of the act of April 22, 1874 : Mearshon & Co. v. Pottsville Lumber Co., Ltd., 187 Pa. 12 ; Milsom Rendering & Fertilizer

Co. v. Kelly, 10 Pa. Superior Ct. 565 ; West Jersey Ice Mfg.
Co. v. Armour & Co., 12 Pa. Superior Ct. 443 ; Swing v. Munson, 191 Pa. 582.

OPINION BY MR. JUSTICE POTTER, November 8, 1901 :

It appears from the record in this case, that a citizen of Pennsylvania executed a mortgage, to a foreign building and loan association, upon property in Pennsylvania. Default having been made, a scire facias was issued, and, by agreement of the parties, the case was tried without a jury. The validity of the mortgage was sustained, and judgment entered for the amount found due. On appeal to the Superior Court, the judgment was reversed, on the ground that the transaction involved an investment of part of the capital of the plaintiff company within the state of Pennsylvania, through an agency within the state, for the prosecution of the company's corporate business, in violation of the act of April 22, 1874.

The plaintiff is a building and loan association, incorporated under the laws of the state of New York with its principal office at Geneva, in the said state. It had not complied with the provisions of our act of assembly of April 22, 1874, with reference to foreign corporations, at the time of the execution and delivery of this mortgage, but, shortly afterwards, an attempt was made to comply with the act. Under the view which we take of the case, we do not deem this important. The mortgage contains the following recital :

" This grant is intended as a security for the payment of the sum of $500, in the manner following, that is to say, the sum of $5.00 contribution or principal, and $2.08 interest, and $2.09 premium each and every month from the date hereof, for such term as will secure to the said, the People's Building, Loan & Saving Association, the payment of the full sum of $100 on each and every one of the mortgagor's shares thereby secured to be paid, such payments to commence on or before Saturday, November 30, 1889, and to be continued and made on or before the last Saturday of every month thereafter, until the said five shares are fully matured, and also for the payment of all dues, fines and penalties that may be imposed upon the said George T. Berlin, as member of said association, pursuant to the articles of association and the by-laws thereof, to be paid into the

treasury of the said association, according to the conditions of a bond this day executed and delivered by the said George T. Berlin, to the party of the second part," etc.

The bond and mortgage and the defendants' subscription to the stock of the association, were practically parts of one transaction, intended to secure the payment of a loan of money, upon which the rate of interest was greater than the legal rate in Pennsylvania, but which did not exceed that of New York.

The whole arrangement was in accord with the regular and authorized course of business of the plaintiff association.

The eighth paragraph of the terms and conditions of the defendants' certificate of stock, is as follows: "The articles of association, by-laws, terms and conditions, together with the application, are to be construed together as the contract between the shareholder and the association."

The first inquiry, then, is, as to whether the agreement was a New York or a Pennsylvania contract. If the former, then the usury laws of Pennsylvania do not apply. This is clearly settled in Bennett v. Building & Loan Association, 177 Pa. 235.

As stated in the opinion in that case: "The fact that the plaintiff lived in Pennsylvania and negotiated there with an agent of the defendant, either for the membership or for the loan, is not of the slightest significance. The contract must be adjudged by its expressed terms, no matter where the parties were when it was made."

The proposition cannot be disputed that contracts are to be governed by the law of the place where they are to be performed. Where was this contract to be performed? Turning to the articles of association, we find that they provide for the organization of the plaintiff as a body corporate, with its principal office at Geneva, New York, with the usual executive officers, together with trustees, and a board of managers or directors. With regard to the funds, it is made the duty of the secretary, " To receive all moneys paid into the association, and to pay the same over to the treasurer." Loans can only be made by the board of directors, for, by article 8, section 2, " It shall be the duty of the board of directors to judge of the sufficiency of all property offered as a security for advances and loans, and attend generally to the financial affairs of the association." Provision is also made for the payment of all

instalments upon the shares, and all fines and penalties, "to the association." The transfer and withdrawal of stock can only be made by giving the secretary notice, and procuring an entry to be made upon the books of the association.

All these provisions go to show that the fundamental intent, was to conduct and control the business at the home office. The by-laws are equally explicit. For instance, article 5, " All applications for loans shall be examined and accepted or rejected by the board of directors." By article 16: " All remittances for admission, weekly and quarterly instalments, fines, penalties, interest and premiums; and all other payments, shall be made to the secretary of the association at their principal office in Geneva, New York." And by article 24, "No payment of any kind shall be credited to a shareholder until received by the secretary at the principal office." By an amendment of article 1 of the by-laws, " All moneys to be paid by the association on account of its shares of stock, or otherwise, shall be payable at the home office of the association at Geneva, New York, after acceptance and approval of satisfactory proofs." By article 25, as amended, " Any shareholder desiring a loan from the association by way of advance on his shares, shall have his real property, offered as security for such advance, appraised by three shareholders of the association, appointed by the board of directors; or in such other manner as shall be satisfactory to the board of directors; such appraisal shall be in writing, and returned with his application for such advance, together with his official search, to the board of directors, and, if said appraisal and official search shall be approved by the board of directors, the shareholder shall be entitled to receive a loan, by way of advance," etc.

Throughout the by-laws, it is provided that, wherever notice is required, it is to be given to the secretary of the association. It is everywhere apparent that the business of the association could only be consummated at the home office.

In this particular case, the application for stock and loan was made through plaintiff's agents at Bradford, Pennsylvania, but was forwarded by them to the office at Geneva, New York, where it was acted upon, and the contract thus completed.

The conclusion is inevitable, that, under the articles, and the by-laws, as well as by the terms of the bond and mortgage, the

payments were to be made in the state of New York. In so far, therefore, as the defense is founded upon a claim of usury, it cannot be sustained.

The remaining question for consideration is, whether the transaction, on the part of the plaintiff, was such a "doing of business" in Pennsylvania as is contemplated in the prohibition of the act of April 22, 1874. As we have already seen, under the articles of association and the by-laws, and as a matter of fact, the business of the association was done in New York. Its corporate functions were all exercised there. The applications for stock and for the loan were made and considered in New York, and there accepted. By the express terms of the by-laws, the money paid by the stockholders and borrowers was to be paid there, as was also the payment of the money to the defendant by the association in the completion of the transaction. In the contemplation of the law, the entire contract, from inception to the finish, was performed in New York.

The opinion of the Superior Court seems to be grounded upon the assumption that the transaction involved the investment or employment of a part of the plaintiff's capital within the state of Pennsylvania. The money was, however, loaned on the bond, a New York contract, and the mortgage was given merely as security. The plaintiff took no title to any property in Pennsylvania by the transaction. It merely made a loan of part of its capital to one of its shareholders, who was a citizen of Pennsylvania. The capital, if employed in the state of Pennsylvania, was so employed by a citizen of Pennsylvania, and not by the plaintiff corporation. In so far as the business of loaning money was concerned, it was carried on in the state of New York, and not in the state of Pennsylvania. If the operations of the plaintiff be measured by the test of agency, they will not be found, under the decisions, to be in violation of the act of 1874. The act of a foreign corporation in selling goods here by agents, and shipping the goods to purchasers, is not doing business in this state, within the prohibition of the act: Mearshon v. Pottsville Lumber Company, 187 Pa. 12; Wolff Dryer Company v. Bigler & Co., 192 Pa. 466. The most that can be said of the plaintiff, is, that it had an agency at Bradford, by which its shareholders in that vicinity were more conven-

iently enabled to do business with the home office of the plaintiff corporation in New York.

The Superior Court, in its opinion in Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 192, sums up a number of the cases, when it says:

"As to the legal scope of the words 'doing of business in this commonwealth," we obtain some light from the decision in Commonwealth v. Standard Oil Co., 101 Pa. 119, where it was held that the purchase of crude oil in this state and the shipment thereof to other states, to be refined, did not constitute doing business within the meaning of our tax laws. So, in Commonwealth v. American Tobacco Co., 173 Pa. 531, it was decided that the taking orders and selling by sample, by agents of a foreign corporation, did not make it liable for a mercantile tax, under an act of assembly imposing the same on 'every person who shall deal in the selling of any goods, wares and merchandise.' See also Kilgore v. Smith, 122 Pa. 48, wherein it was said, that one of the objects of the act of 1874 was to bring corporations employing capital in this state and doing business here, within the taxing power of the commonwealth. 'It does not appear,' said the court, 'that this corporation brought any of its capital into this state. Its place of business was in Maryland, its capital, if it had any was there. It had contracts with some of its members, residing in Pennsylvania, by which they were to can their fruit and hold the same to be disposed of by the corporation.' For these and other reasons it was held, that the corporation was not subject to the act of 1874."

In the present case, the learned trial judge did affirm the defendant's third request for findings of facts, which was as follows: "At the date of the transaction involved in this controversy, the plaintiff corporation was employing a portion of its capital in making loans in the city of Bradford, county of McKean, and commonwealth of Pennsylvania, such loans being secured by mortgages on real estate in the said city." But this finding does not involve the deduction sought to be drawn from it by the appellee, nor does it warrant the conclusion of law contended for. No such result was in the contemplation of the learned trial judge, for, in answering the defendant's fifteenth request for finding of facts, he refused to find that

the employment of capital in making loans to residents of Pennsylvania, and the loan to the defendant, was a " doing of business " within the contemplation of the act of assembly. The loan was made by the plaintiff in the State of New York. True, it was made with the knowledge that the capital so loaned was to be used by the borrower in the state of Pennsylvania. The action of the plaintiff was, however, bounded by the fact of making the loan. It could no more be said to be doing business with its capital in Pennsylvania, under such circumstances, then a bank can be said to be engaged in the iron business, or in the lumber business, because of the fact of its loaning money to an iron manufacturer or a lumber dealer.

Great reliance seems to have been placed upon the case of Swing v. Munson, 191 Pa. 582, as sustaining the position of the appellee, but the question there was entirely different from that now under consideration. It did not involve the construction of the act of 1874. The question was as to the right to solicit and effect insurance within the state without complying with the stringent provisions of the act of April 4, 1873. Insurance cases stand upon a basis of their own. The business of insurance has been held not to be commerce, as an insurance policy has been defined merely as a contract of indemnity, and, for this reason, not protected as interstate commerce. The case of Swing v. Munson, can, therefore, have no application to the question in hand.

Our conclusion is, that the facts disclosed by this record, do not make a case within the prohibition of the act of April 22, 1874.

It is, therefore, ordered that the judgment of the Superior Court be reversed, and that of the trial court be reinstated, and that judgment be entered in favor of the plaintiff, for the sum of $269.68, with interest from March 28, 1899, and costs.