EARLE v. CHESAPEAKE & O. RY. CO.

(Circuit Court, E. D. Pennsylvania. February 8, 1904.)

No. 31.

1. FOREIGN CORPORATIONS—PROCESS—SERVICE—BUSINESS WITHIN STATE.

Where in an action in a federal court, sitting in Pennsylvania, against a foreign corporation, the statement of claim filed when the summons was issued described the defendant as a railway corporation of the state of Virginia, and neither such statement, the summons, the præcipe therefor, nor the return, recited that the corporation was transacting business in Pennsylvania, a service made on the corporation's assistant secretary in Pennsylvania was insufficient to confer jurisdiction of the corporation.

2. SAME—EVIDENCE.

Defendant, a Virginia railroad company, neither owned nor operated any railroad located in Pennsylvania, and maintained no office in that state, though three directors and its assistant secretary resided there, who may at various times have received and given information indirectly affecting

---

¶ 1. Service of process on foreign corporations, see note to Eldred v. American Palace Car Co., 45 C. C. A. 3.

¶ 2. Foreign corporations "doing business" in state, see note to Wagner v. J. & G. Meakin, 33 C. C. A. 585.

, the corporation's business elsewhere. Defendant's cars, both freight and passenger, were transported through Pennsylvania by other railroads for the convenience. of passengers and shippers; such railroads, however, paying for the use of the cars, and receiving the freight and passenger rates for that portion of the haul that was done in Pennsylvania. Defendant was also a member of a freight transportation line which maintained an agency in Pennsylvania for the solicitation of freight to be shipped under through bills of lading, each line receiving a proportionate share of the freight, and each contributing to the expense of the agency; and another railroad company, located in Pennsylvania, sold coupon tickets in connection with its own tickets only, good over defendant's road, accounting each month to defendant for its proportion of the proceeds. *Held*, that such facts did not justify a finding that defendant was doing business in Pennsylvania, so as to authorize it to be sued in that state.

Asa W. Waters and Chas. Biddle, for plaintiff.
Theodore W. Reath, Thomas Reath, and Joseph I. Doran, for defendant.

J. B. McPHERSON, District Judge. This is a motion to vacate the service of a summons in assumpsit on two grounds: First, that the return of the marshal is fatally defective; and, second, that, even if the return were in proper form, the defendant, which is a corporation of the state of Virginia, is not doing business in Pennsylvania, and therefore cannot be sued in this court.

1. The writ commands the marshal to summon the Chesapeake & Ohio Railway Company, "a corporation under the laws of the state of Virginia," and the return is as follows:

"May 2, 1902, at Philadelphia, in my district, served the within writ on Chesapeake & Ohio Railway Company, by giving a true and attested copy thereof to David C. Green, assistant secretary of said company, and making contents known; also plaintiff's statement."

Nowhere upon the record is there any averment that the defendant is doing business in the state of Pennsylvania, and, in view of this fact, the absence of such an averment from the marshal's return is said to constitute a fatal defect therein. In my opinion, this proposition is sound. In the statement of claim, which was filed when the summons was issued, the defendant is described as a railway corporation of the state of Virginia. Prima facie, therefore, its business of transportation is conducted there; and although, no doubt, it may do part of its business in this state, there is certainly no presumption that this is true. The corporation cannot be here for any purpose unless it is transacting the business for which it was organized. The mere presence of some of its officers or agents does not justify the conclusion that they have brought the corporation with them. That invisible and intangible entity only exists in thought, and is regarded as present in a foreign jurisdiction only when its officers or other agents cross the line of that jurisdiction for the purpose of carrying on the corporate enterprise, and actually do carry it on, within the foreign boundaries. A Virginia corporation cannot be sued in this district as long as it keeps its agents and its property at home, because it is not within reach of the court's process; and therefore, to make a valid service upon it, the fact must exist that the corporation has voluntarily crossed the state line, and by doing business here has placed itself within the power

of the state and federal tribunals. In the state courts of general jurisdiction it may be true that such a return as is now under consideration would be prima facie valid; but, in a federal court of limited jurisdiction, it is hardly necessary to say that every jurisdictional fact must appear upon the record. Therefore the present record should show somewhere that the defendant is doing business in this commonwealth, and, as the fact is nowhere else averred—neither in the præcipe for the summons, nor in the summons itself, nor in the statement of claim—the marshal's return should have supplied the essential fact. In St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, the Supreme Court thus stated the rule that I have just applied (page 359, 106 U. S., page 362, 1 Sup. Ct., 27 L. Ed. 222):

"* * * We are of opinion that, when service is made within the state upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record—either in the application for the writ, or accompanying its service, or in the pleadings, or the finding of the court—that the corporation was engaged in business in the state. The transaction of business by the corporation in the state, general or special, appearing, a certificate of service by the proper officer on a person who is its agent there would, in our opinion, be sufficient prima facie evidence that the agent represented the company in the business. It would then be open, when the record is offered as evidence in another state, to show that the agent stood in no representative character to the company, that his duties were limited to those of a subordinate employé or to a particular transaction, or that his agency had ceased when the matter in suit arose."

Judge Dallas has recently set aside a similar return in this district for the same reason. Scott v. Oil Co., 122 Fed. 835. And the point was decided within a few months by the Circuit Court of Appeals for the Seventh Circuit in Central Grain & Stock Exchange v. Board of Trade, 125 Fed. 463.

This conclusion is in no way affected by the fact that the Pennsylvania act of 1901 (P. L. 614), under whose second section the service in this case was made, authorizes the service of the writ of summons upon any corporation, domestic or foreign, "by handing a true and attested copy thereof to the president, secretary, treasurer, cashier, chief clerk or other executive officer personally." This act only deals with the manner of service. Park v. Oil City Boiler Works, 204 Pa. 453, 54 Atl. 334, where the Supreme Court of Pennsylvania declared that this statute had made no change in the common-law rule concerning suits against corporations, and no change in the jurisdiction of the courts or the liability of corporations to be sued. Section 2 necessarily presupposes that the corporation is already within the state, and is therefore capable of being reached by a writ. Assuming the assistant secretary of the defendant to be an "executive officer," and not merely a subordinate upon whom service would not be sufficient, it is clear that his mere presence, either as a visitor or as a resident, in this district, is immaterial. The vital question is, was the corporation doing business in the state of Pennsylvania? If it was not, the fact that the assistant secretary chose to live here could not confer jurisdiction upon any court; and in the federal courts, as I have already said, every jurisdictional fact must appear upon the

record. Upon the subject of service of process upon a foreign corporation, see the note to Eldred v. American Palace Car Co., 45 C. C. A. 3, which contains an extensive collection of the cases upon this subject.

2. But as the technical defense just considered may be avoided in another suit, or in the return upon an alias writ, it is desirable to decide the remaining and more important question. Upon this point, depositions have been taken, and there is no dispute about the facts. They are as follows, to use the language of defendant's counsel:

"(1) The defendant, the Chesapeake & Ohio Railway Company, is a railroad corporation organized and existing under the laws of the state of Virginia, and operates a railroad only in the states of Virginia, West Virginia, Kentucky, and Ohio, and has no stations, depots, or railway within the state of Pennsylvania. The general offices of the defendant company are at Richmond, Virginia, and it operates a line of railroad, for the carriage of freight and passengers, extending from Virginia, through the states of Virginia, West Virginia, and Kentucky, to Cincinnati, in the state of Ohio.

"(2) David C. Green, residing at St. Davids, Pennsylvania, is the assistant secretary of the defendant corporation, and John P. Green, S. M. Prevost, and Samuel Rea are directors of the defendant corporation, all three of whom reside in or near Philadelphia, in the state of Pennsylvania; but neither the said assistant secretary, nor any of the three directors mentioned, have offices in Pennsylvania for the transaction of business of the defendant company, and no meetings of the board of directors of the defendant company were held in Pennsylvania on or prior to the date when service of the writ herein was attempted, except that one witness [John P. Green's testimony taken in Philadelphia, May 1, 1903, page 3] testified that he could not remember any meeting of the board in Philadelphia, but thought the board 'met once' in Philadelphia 'two or three years ago'; nor do. any of them do or transact in Pennsylvania any business for the defendant company. Some of the meetings of the board of directors of the company are held in the city and state of New York. The said David C. Green has no corporate seal or office furniture of the defendant company in his possession or for his use in Philadelphia or in Pennsylvania.

"(3) The defendant company, with the Cleveland, Cincinnati, Chicago & St. Louis Railway, Atlantic Coast Line Railroad, Seaboard Air Line Railway, Southern Railway, Ohio Central Railroad, and Columbus. Hocking Valley & Toledo Lines, Cincinnati, Hamilton & Dayton Railway, Pittsburg, Cincinnati, Chicago & St. Louis Railway, Old Dominion Steamship Company, Illinois Central Railroad (Southern Lines), and Clyde Steamship Company, is a member of a freight soliciting bureau [see testimony of E. D. Hotchkiss, page 31 of depositions taken at Richmond, Va., March 24, 1903], or arrangement solely for the purpose of soliciting interstate freight to move via their respective lines, known as the Kanawha Despatch; and the said Kanawha Despatch maintains in. Philadelphia, Pennsylvania, a freight solicitor, James Harris; he being the agent of the Kanawha Despatch, composed of the last-named carriers, including the defendant company; each carrier being entitled to its charges for such service as it may render on its own line. The Kanawha Despatch is simply the name of a route by which freight moves, as is indicated by the evidence, and particularly by the bills of lading in evidence, with 'Kanawha Despatch Routes,' or 'Chesapeake & Ohio Route,' as a caption. The expenses of the said Kanawha Despatch, including the salary of James Harris, are paid proportionally by the carriers interested in the freight bureau, according to the revenue, upon the basis of the distance such freight is carried by each carrier, from the business so solicited and obtained. The carriers do not divide profits or expenses of transportation of freights so solicited by the said James Harris, but each line bears the general expenses of its own route and of all transportation over it; and the only duties of the said James Harris. and his only authority, so far as the defendant company is concerned, are limited and confined to the solicitation in Philadelphia. of.

interstate freight to be moved or transported over the line of this defendant outside of the state of Pennsylvania, and wholly between states other than Pennsylvania; the issue of through bills of lading for transportation of goods, including such interstate transportation, over defendant's railway wholly outside the state of Pennsylvania, such bills of lading being by their terms several, and not joint, and limiting loss or damage to the carrier on whose line the loss or damage occurs; and the giving of information as to defendant's freight charges for such transportation to persons desirous of procuring the same. James Harris has no authority for this defendant to collect, and does not collect, the charges for such interstate transportation, nor does the defendant company control or appoint him, and has merely one vote in his appointment as a member of the soliciting freight bureau known as the Kanawha Despatch.

"(4) The defendant company, by an arrangement with the Pennsylvania Railroad Company, delivers certain of its passenger cars to the Pennsylvania Railroad Company, at Washington, District of Columbia, which cars are then made up into a train by the Pennsylvania Railroad Company, and operated by the Pennsylvania Railroad Company from Washington to Jersey City, New Jersey, and again returned to Washington solely in charge and management of employés of the Pennsylvania Railroad Company between the two last-mentioned points, the revenue from passengers carried upon the said train between Washington and Jersey City being appropriated to and by the Pennsylvania Railroad Company; the object of this hiring by the defendant company to the Pennsylvania Railroad Company of the said passenger cars being to avoid the necessity of change by through passengers at Washington, District of Columbia, and the hiring and use of the coaches of the defendant company by the Pennsylvania Railroad Company while such coaches are in the service of the Pennsylvania Railroad Company is paid for by the Pennsylvania Railroad Company on a mileage basis, at three cents per car mile.

"(5) The defendant company, at times prior to the attempted service of the writ herein (May 2, 1902), and until a date early in July, 1902, allowed the Pennsylvania Railroad Company to haul the Chesapeake & Ohio dining car between Washington and Jersey City, through Philadelphia; the steward, cooks, and waiters remaining on the car, but the transportation of the car being conducted entirely by the Pennsylvania Railroad Company north of Washington, and through the state of Pennsylvania.

"(6) The defendant company, under a custom among the railroad systems of the United States, delivers to the possession of its connecting companies, from time to time, at such points as Richmond, Virginia, and Washington, District of Columbia (all of them being points outside of the state of Pennsylvania), where its line of railroad connects with the lines of other companies, its freight cars, loaded with merchandise, consigned to various points in the United States; and some of its said cars are transported, solely in the possession, charge, and control of companies other than the defendant company, to points in and beyond Pennsylvania, and pass through or into Pennsylvania in the course of such transportation. And when the haul of the said cars is completed by such connecting companies of this defendant, the said cars are in due course returned to this defendant, the connecting companies paying to this defendant as compensation for the hiring and use of said cars the sum of twenty cents for each day such connecting companies retain possession, use, and control of each car, without regard to where or how far the car is hauled. The purpose of this arrangement is the convenience of the shippers, and to avoid the delay incident to unloading the cars and reloading the merchandise into other cars at such connecting points. The defendant company does not receive the freight charges for the haul of such merchandise on the lines of its connecting companies in Pennsylvania and elsewhere, and does not haul the said cars through, into, or in Pennsylvania.

"(7) The Pennsylvania Railroad Company, a railroad corporation incorporated, organized, and doing business in and under the laws of Pennsylvania, sells at its ticket offices in Philadelphia coupon tickets of the defendant company, but only in connection with the sale of Pennsylvania Railroad tickets, and remits on monthly ticket balances the moneys so derived from such sales, so far as the said moneys are to pay for the Chesapeake & Ohio Railway

Company coupon, and only in connection with the purchase by passengers of tickets over the Pennsylvania Railroad to points where the said railroad connects with the railway of the said defendant company, or connects with other lines of railroad which ultimately connect with the railroad of the defendant company."

As it seems to me, nothing in the foregoing statement constitutes such a doing of business in the state of Pennsylvania as subjects the defendant to the jurisdiction of the courts. Clearly, the mere residence of the three directors and the assistant secretary is not enough. The corporation maintains no office in the state, and the occasional giving of information to one of the directors, who is also the chairman of the finance committee, by the assistant secretary, and the infrequent receipt or posting of a letter, while these acts may indirectly affect the transaction of the corporate business elsewhere, do not, in my opinion, bring the corporation itself within this jurisdiction. Neither does the transit of the defendant's freight and passenger cars across the state, either separately or as solid trains, constitute the transaction of corporate business by the defendant. These cars are drawn by the Pennsylvania Railroad Company, and not by the defendant itself, and the Pennsylvania Company is paid for this service by receiving a due proportion of the money paid for freight and passage. The transportation is not the defendant's act, and the fact that its cars continue to be used, for the convenience of passengers and shippers, after the state line has been reached, is unimportant. To hold otherwise would make many railroad companies suable in nearly every state in the Union, for it is well known that a freight car of any railroad may visit many states before it is finally returned to its owner. Such cars are really hired to other carriers, and for the time are the cars of the railroad that hauls them. Wall v. Norfolk & West. R. Co. (W. Va.) 44 S. E. 294. The sale of tickets over the defendant's railroad by the Pennsylvania Company in Philadelphia is only made in connection with the sale of the Pennsylvania company's own tickets, and is largely for the convenience of travelers. If this constitutes the transaction of corporate business in a state, it is possible that every important railroad company in the United States may be sued in this district, and in many other districts as well. Finally, to maintain a freight soliciting agency in connection with other transportation companies has been decided not to subject the various companies to suit in the jurisdiction where the agency is maintained. Pennsylvania R. R. Co. v. Rogers, 44 S. E. 300, 62 L. R. A. 178. In that case the Court of Appeals of West Virginia said:

"The existence of this Star Union Line and its operations in the county of Ohio is the only ground for saying that the Pennsylvania Railroad Company does business in the state. This seems to be fully admitted. It is not contended that the railroad company has complied with the statutory requirements giving to foreign corporations the rights, and subjecting them to the liabilities, of domestic corporations. So it must be determined whether its connection with the Star Union Line amounts to a doing business within the state, so as to make it liable to garnishment. The Star Union Line is a sort of joint traffic arrangement maintained by several railroads to facilitate the handling and forwarding of freight. One of these is the garnishee company. It appoints the president of the Star Union Line, and he appointed McCormick, the agent in charge, and it is said McCormick solicits freight for the

Pennsylvania Railroad Company. The garnishee company contributes to the expenses and maintenance of this arrangement, and in that way to the payment of the agent for his services. It does not amount to a doing business within the state, within the meaning of the law of garnishment. The Pennsylvania Railroad Company has not in any sense made itself a West Virginia corporation by contributing to the maintenance of this joint traffic arrangement, although it may in some sense—a limited sense—amount to a doing business within the state. It could not be regarded as being within the state otherwise than transiently. It operates no lines here, runs no cars here, and performs none of its business as a common carrier within the state."

As was said in St. Louis Ins. Co. v. Railroad Co., 104 U. S. 146, 26 L. Ed. 679, "The arrangement in question was one simply for the convenience both of the shipper and the carrier," and the court decided that such an agreement does not make the companies partners.

What is "doing business" within a state is also considered in Phillips v. Library Co., 141 Pa. 462, 21 Atl. 640, 23 Am. St. Rep. 304; Pavilion Co. v. Hamilton, 15 Pa. Super. Ct. 389; New Jersey Steel Co. v. Riehl, 9 Pa. Super. Ct. 220; Building Association v. Berlin, 201 Pa. 1, 50 Atl. 308, 88 Am. St. Rep. 764; Mandel v. Swan Land Co., 154 Ill. 177, 40 N. E. 462, 27 L. R. A. 313, 45 Am. St. Rep. 124; Delaware River Quarry Co. v. Railway Co., 204 Pa. 22, 53 Atl. 533; Commonwealth v. Conglomerate Mining Co., 1 Dauph. Co. Rep. (Pa.) 85; Waterman Co. v. Parker Pen Co. (C. C.) 100 Fed. 544. See, also, Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964.

The motion to set aside the service must be granted.