MICHIGAN ALUMINUM FOUNDRY CO. v. ALUMINUM CASTINGS CO. et al.

(Circuit Court, E. D. Michigan, S. D.   July 24, 1911.)

1. CORPORATIONS (§ 662*)—ACTION AGAINST FOREIGN CORPORATION—JURISDICTION.

Under the federal decisions, before a foreign corporation is subject to suit in a state in general, two things must concur: (1) The corporation must be doing business in the state; and (2) process must be served there on the agent who represents it in business there.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 662.*]

2. COURTS (§ 274*)—JURISDICTION—CORPORATIONS "FOUND" IN DISTRICT.

For the purpose of conferring jurisdiction on a Circuit Court of a suit for damages under Sherman Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), which authorizes a suit "in the district in which the defendant resides or is found," a foreign corporation is "found" in the state if it is doing business therein, but not otherwise.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814; Dec. Dig. § 274.*

For other definitions, see Words and Phrases, vol. 3, p. 2927; vol. 8, p. 7666.]

3. COURTS (§ 274*)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE.

A Pennsylvania corporation maintained a permanent office in Detroit, with its name and the name of a person as manager on the door. It paid the rent of the office, and the salary of the manager from the home office, and the business it did in Michigan was substantial, amounting to a large sum per annum. It advertised its presence in the general city directory of Detroit, and in the telephone directory, and its general sales agent came frequently to Detroit to consult with the local manager and to meet customers. In the main the manager solicited orders for goods which were forwarded to the home office for acceptance, but he frequently closed contracts with customers for small orders which were filled by the company without objection. *Held*, that the corporation was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

doing business in Michigan in such sense as to be subject to suit in a federal court in that state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814; Dec. Dig. § 274.*

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

4. COURTS (§ 344*)—FOREIGN CORPORATIONS—SERVICE OF PROCESS.

However broad the rule in a state may be, it is the rule of the federal courts that service of process on a foreign corporation, to be valid, must be made on an agent who can be said fairly to represent such corporation in the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 917; Dec. Dig. § 344.*

Service of process on foreign corporations, see notes to Eldred v. American Palace-Car Co., 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78 C. C. A. 473.]

5. CORPORATIONS (§ 668*)—FOREIGN CORPORATIONS—SERVICE OF PROCESS—AGENT.

The local manager of a corporation in charge of its office and business in the state and advertised as such manager on the door of its office and its stationery is an agent who fairly represents the corporation in the state, and on whom valid service may be made in a suit against the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. § 668.*]

6. CORPORATIONS (§ 668*)—FOREIGN CORPORATIONS—SERVICE OF PROCESS—AGENT.

The general sales agent of a Pennsylvania corporation which maintained an office and agency in Detroit for the sale of its products, who frequently visited Detroit on the corporation's business, and who exercised authority over the local manager, was an agent of the company when in Michigan, upon whom valid service might be made in a suit against the corporation in that state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. § 668.*]

7. COURTS (§ 274*)—ANTI-TRUST ACT—ACTION FOR DAMAGES—DISTRICT OF SUIT.

A suit for damages under Sherman Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), which authorizes such suit to be brought "in the district in which the defendant resides or is found," may be maintained in the district of plaintiff's residence, against a foreign corporation, a citizen of another state, where defendant is "found" therein.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 274.*]

At Law. Action by the Michigan Aluminum Foundry Company against the Aluminum Castings Company and others. On motion by defendant Aluminum Company of America to set aside service. Motion overruled.

On motion by defendant Aluminum Company of America, upon special appearance, to set aside service of process in a suit at law under section 7, Act July 2, 1890, c. 647, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), to protect trade and commerce against unlawful restraint and monopolies.

Lucking, Emmons & Helfman, for plaintiff.

Gray & Gray, for defendant Aluminum Company of America.

M. B. & H. H. Johnson and Leo. M. Butzel, for defendant Aluminum Castings Co.

ANGELL, District Judge.  The plaintiff is a Michigan corporation. The defendant Aluminum Company of America is a Pennsylvania corporation, with its home office in that state.  Service of the original summons was made in Detroit upon one E. H. Brown, a sales agent of the defendant who resides in Grosse Pointe township, Mich., and does business in Detroit.  Service of an alias summons was made at Detroit upon one E. K. Davis, general sales agent of the defendant, who resides in Pennsylvania.

The defendant insists that the service is not sufficient.  Several affidavits have been filed in support of the motion, and one in opposition thereto.  The testimony of E. K. Davis and other persons was taken by deposition on the part of the plaintiff.  When the motion came on to be argued on these affidavits and depositions, the defendant asked that the questions of fact involved be submitted to a jury.  The plaintiff's counsel objected to the delay in the determination of the motion which would ensue if the request should be granted.  The request was denied, and a prolonged argument was had before the court.

The controlling facts in the case are substantially uncontradicted, and appear to be as follows:

The defendant has never filed articles of incorporation in Michigan nor paid the franchise fee, nor appointed an agent for the service of process, as required by the Michigan statute in the case of a foreign corporation which desires to do business in the state.  Defendant has no plant or property, except as hereinafter stated, within the state of Michigan.  It has no warehouse or stock of goods in the state.  None of its officers or directors reside in the state, nor any of its employés except Brown.  In the latter's office, maintained as hereinafter stated, were some samples of its manufactured products. Orders for goods to be delivered in Michigan were filled from its factories in other states.  Shipments were ordinarily made f. o. b. cars at these factories.

For some years past the defendant has employed one Rutherford as its sales agent for Michigan and Ohio with headquarters at Cleveland, Ohio.  Rutherford employed as his salesman, and paid, one E. H. Brown, who also lived in Cleveland.  The latter was in Michigan a great deal in endeavoring to sell and in selling goods.  In November, 1909, it was deemed best to have this Brown establish himself in Michigan, and in that month he took up his residence in Grosse Pointe, and opened an office in Detroit.  After a little this office was leased by the owner of the building to the defendant, whose name appears on the door with Brown's name as manager.  On the stationery used by Brown the defendant's name appears likewise.  The defendant's name has been inserted for a year or two in the Detroit city directory, and in the telephone directory of Detroit.  Defendant pays the rent of the office and Brown's salary.  His incidental expenses are

paid directly or indirectly by Rutherford. In the office mentioned Brown transacts the business of the defendant.

. This business in itself appears to differ in no essential respect from that which he did when employed by Rutherford and traveling to Michigan from Cleveland. He is kept informed as to prices. He solicits formal orders for goods, and takes them and reports them either to Rutherford or to the defendant's principal office in Pennsylvania. These orders are subject to approval or disapproval by his superiors in the sales department of the company. In fact, they seem rarely, if ever, to have been disapproved. It appears from the affidavits and depositions of Brown's superior officers that he had never been given express authority to make a bargain which was not subject to disapproval or rejection by these superiors. In many cases, however, of what Brown calls "small business," he has made definite agreements to sell without referring the matter to headquarters. On cross-examination by defendant's counsel he was asked:

"Q. Are there any instances where you undertook to make a binding agreement on behalf of the Aluminum Company of America with the trade, without either having first obtained special authority for the particular instance from the Pittsburg office, or having it understood that the order would have to be forwarded and approved before it would be effective? A. Yes, sir.

"Q. Under what circumstances would any such orders be taken? A. Well, in the case of where we have a customer of long standing, not under contract, for instance, or in the general run of small business.

"Q. Is that authority given you by the Pittsburg office, or was that a business risk you assumed on your own responsibility? A. I might say it is the authority which has grown up from the authority which Mr. Rutherford has always given me.

"Q. Does that authority come from Mr. Rutherford or from the Pittsburg office? A. It has always come from Mr. Rutherford.

"Q. Are those exceptional cases or are they frequent—those where you would undertake to sell to an old customer direct? A. Oh, they are quite frequent—quite usual."

On redirect examination he testified that such bargains for "small business" would be made probably once a week, might be oftener, and maybe not; that by "small business" he meant "orders for say fifty pounds of sheet or a hundred pounds, or five hundred, orders—scattered orders from people who do not use much"; that it might mean as much as one hundred dollars a week. "Q. That kind of business you handle entirely yourself, do you not? A. Yes, sir."

He further testified that these "small business" orders were transmitted by him to the Pittsburg office and filled by shipments from the manufacturing plants of the corporation. He further testified that the defendant had the right to refuse to carry out such sales, though he mentions no case of refusal to abide by his agreement of this kind, and said that he did not always advise the buyer of the company's right to refuse. Occasionally Brown, at the request of the company's treasurer, pressed delinquent debtors in Michigan for payment of overdue accounts. Occasionally scrap metal from factories in Michigan was bargained for by Brown, but apparently more often the bargain was made by some nonresident agent of the company.

Davis, the other person served, was the head of the sales department

of the defendant's business. He had full authority to make agreements to sell goods which should be binding on the defendant. He had general supervision of the defendant's local selling and soliciting agents. He traveled a good deal, visiting such agents, advising them, and instructing them, and aiding them to get business. He called upon customers to ascertain their requirements, and generally to keep in touch with the trade. He came frequently to Detroit in the course of his trips, as often as five times in six months prior to the date of service upon him. On the day when was served with the alias summons, he was in Detroit on the defendant's business. He was in conference with Brown, and with one large customer of the company. He called with Brown upon the manager of the Ford Motor Company with a view to getting a large order. No order was, however, procured, and no sale was made by him or by his assistance on that day.

Upon these facts defendant contended (a) that it was not doing business in Michigan in such sense that it was subject to suit in this court when this action was brought; (b) that, if it was doing business in Michigan in the sense mentioned, neither Brown nor Davis were such an agent as that service upon him was binding.

Plaintiff contended (a) that the defendant "was found" in the district; and (b) that Brown and Davis were proper agents upon whom to serve the writs.

[1] The question raised must be determined by the principles of the federal decisions, even if such service as was had would be upheld as sufficient in the state courts. Barrow Steamship Co. v. Kane, 170 U. S. 111, 18 Sup. Ct. 326, 42 L. Ed. 964. By these decisions it is settled that before a foreign corporation is subject to suit in a state, in general, two things must occur: (1) The corporation must be doing business in the state; and (2) process must be served there on the agent who represents it in business there. Peterson v. Railroad Co., 205 U. S. 390, 27 Sup. Ct. 513, 51 L. Ed. 841.

[2] First. Does the fact that the act in question uses the phrase "resides or is found" obviate the necessity of showing that the corporation is "doing business in the state"? It would appear not. In the absence of authoritative decisions on this act of 1890, exactly in point, rulings on a similar act may be examined with profit. Under the act of 1875 (Act March 3, 1875, c. 137, § 1, 18 Stat. 470 [U. S. Comp. St. 1901, p. 587]) which used the phrase "is found," it was held that a foreign corporation "was found," for the purpose of service, "where it was doing business." Merchants' Mfg. Co. v. Grand Trunk Ry. (C. C.) 13 Fed. 358; Mohr v. Insurance Co. (C. C.) 12 Fed. 474 (Matthews, J.); Block v. Atchison, etc., Co. (C. C.) 21 Fed. 529 (Brewer, J.); Spencer v. Kansas, etc., Co. (C. C.) 56 Fed. 741; Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853; New England Ins. Co. v. Woodworth, 111 U. S. 146, 4 Sup. Ct. 364, 28 L. Ed. 379. There seems no reason to give a broader meaning to the words in the act of 1890 than to those in the act of 1875. The ruling in Caledonian Coal Co. v. Baker, 196 U. S. 432, 25 Sup. Ct. 375, 49 L. Ed. 540, an action in part under the act now in question, is at least not inconsistent with this conclusion, if, indeed, it does not by fair implication

require it. If, however, the corporation was "doing business" in Michigan, it must be held to have been "found" there provided the proper agents were served.

[3] Second. The next question, then, to be determined is whether the defendant was doing business in Michigan, when this action was begun, in such sense that it was subject to suit in this court. This question is not free from difficulty. The decisions affecting it are numerous and not entirely harmonious, nor is it easy to ascertain from them what is the proper test to apply for determination of the question. The defendant maintained a permanent office in Detroit with its name and the name of Brown as manager upon the door. It paid the rent of this office and Brown's salary from the home office. The business it did in Michigan was substantial, amounting to a large sum per annum. Its presence in the state by its agent was continuous, and not occasional or casual. It advertised its presence in the general city directory of Detroit and in the telephone directory. Its general sales agent came frequently to Detroit to consult with the Detroit manager, to meet customers, and generally, to look after sales in the city and state.

Expressions in several cases would indicate that what was done was clearly a doing of business in Michigan by the defendant for the purpose of giving jurisdiction. See St. Louis Wire, etc., Co. v. Consolidated Wire Co. (C. C.) 32 Fed. 802; Doe v. Springfield Boiler Co., 104 Fed. 684, 44 C. C. A. 128; Frawley v. Penn. Cas. Co. (C. C.) 124 Fed. 259. And a recent case in New York, in effect, so holds. Chadeloid Chem. Co. v. Chicago, etc., Co. (C. C.) 180 Fed. 770.

If policies of insurance are in force in favor of residents of a state, on which premiums are to be paid, and under which losses may have to be paid and investigations and adjustments made in the state, the insurance company is for purposes of suit doing business in such state. Conn. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Lumberman's Ins. Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810; Commercial Mutual Acc. Co. v. Davis, 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782.

The last decision of the Supreme Court to which my attention has been called (International Text-Book Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 24 L. R. A. [N. S.] 493) it seems to me tends to the same conclusion, although the precise question under consideration was not involved. In this case, in view of the following facts, it was held that the plaintiff was doing business in Kansas. The company maintained no office in the state. It paid a resident agent who solicited and forwarded to it applications for scholarships in the plaintiff's correspondence schools. and collected and remitted deferred payments on scholarships. The plaintiff sent to the pupil text-books and instruction papers, and gave its instructions through the mail. A statute forbidding recovery to the plaintiff in a suit brought by it because it was doing business without complying with a state statute was held inapplicable because a burden on interstate commerce, not because the company was not carrying on business in Kansas.

Upon the facts here it might well be held, in view of the doctrine of the cases mentioned, that the defendant was doing business in Michigan so as to be subject to suit there, notwithstanding its business is interstate commerce.

It was, however, strongly urged upon the argument that what was done in Michigan was in the main only solicitation of interstate trade, and that by doing such business the corporation did not subject itself to suit here. It appears to be generally agreed that, if a foreign corporation sends its salesmen through a state to solicit orders for goods to be shipped into it, the corporation is not subject to suit in the state as doing business there. Wm. Grace Co. v. Henry Martin Co., 174 Fed. 131, 98 C. C. A. 289; Bruner v. Kansas Moline Co., 168 Fed. 220, 93 C. C. A. 504; Strain v. Chicago, etc., Co. (C. C.) 126 Fed. 831; Coit v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819. The same rule is applied to a traveling solicitor of advertising to be published in another state. Boardman v. S. S. McClure Co. (C. C.) 123 Fed. 614. In this district this rule has been followed in at least two unreported cases. Globe Tobacco Co. v. Bloch Bros. Co., No. 3939 in Equity (no written opinion); Whitney v. Anheuser-Busch Co., No. 8363 (no written opinion).

But the fact that the salesmen are itinerant is not the criterion. If a railroad company maintains an office and a resident agent in a state where it has no lines, but that agent only solicits traffic for its lines outside the state, the business done does not subject it to suit in the state of the agent's residence. This has been repeatedly and at length authoritatively held. Green v. Chicago, B. & Q. R. R. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; Maxwell v. Railroad Co. (C. C.) 34 Fed. 286; Fairbank v. Railroad Co., 54 Fed. 420, 4 C. C. A. 403, 38 L. R. A. 271; Wall v. Railroad Co., 95 Fed. 399, 37 C. C. A. 129; Earle v. Railroad Co. (C. C.) 127 Fed. 235; McGuire v. Railroad Co. (C. C.) 155 Fed. 230. The same rule has been applied to resident agents soliciting advertisements to be published outside the state. Union Asso. Press v. Times Star Co. (C. C.) 84 Fed. 419. And to an agent soliciting the purchase of goods. Case v. Smith, etc., Co. (C. C.) 152 Fed. 731; Hefner v. Amer. Tube, etc., Co. (D. C.) 163 Fed. 866. See, also, Dixie Mattress Co. v. Stearns, etc., Co., 185 Fed. 431, 107 C. C. A. 501.

Against the argument based on these cases plaintiff urged that the rule is that if the agent has authority to close a bargain for goods, and not merely to solicit an order which may be approved or rejected by his nonresident principal, in such case the principal is doing business in the state where the agent resides. Irons v. Rogers (C. C.) 166 Fed. 781; Palmer v. Chicago Herald Co. (C. C.) 70 Fed. 887.

Plaintiff further urged that the evidence in the case showed that Brown had power to close bargains in Michigan and exercised it. Ought the doctrine of the solicitation cases to be held to cover this case, if it is true that the agent had power, express or implied from a course of dealing, to make binding contracts of sale? If this case is not governed by the general principles announced in the cases first above mentioned, in my opinion defendant must be held, at least for

purposes of jurisdiction, to have been doing business in the state provided its resident agent had power to do more than merely solicit interstate trade.

Upon his own testimony it is clear that he did frequently, and over a considerable period of time, close bargains with his employer's customery in Michigan for what he calls "small business." In the main these transactions were verbal, but they were referred to headquarters and the employer carried them out.

Defendant insists that Brown had no authority to make such bargains. But it cannot well deny knowledge of what he did nor adoption of his course, since it shipped goods to carry out the bargain. Chicago Pneumatic Tool Co. v. Philadelphia, etc., Co. (C. C.) 118 Fed. 852.

Upon these facts and under the test of selling in the state as distinguished from soliciting orders in the state, as well as under the doctrine of the cases first referred to, it must be held that the defendant was doing business in Michigan so as to give jurisdiction to the court of this case.

[4] Third. If the company must be held to have been doing business in Michigan, it remains to consider whether the service made was sufficient. Under the Michigan statutes, service may be had on "any officer or agent." It is not clear whether a case like this should be held to fall under section 10442, Comp. Laws 1897, as amended by Pub. Acts 1909, p. 7, or in view of Showen v. Owens Co., 158 Mich. 321, 122 N. W. 640, 133 Am. St. Rep. 376, under section 10468, affecting domestic corporations, and foreign corporations doing a local business in the state. If the Michigan statutes are to determine the sufficiency of service, it was sufficient under either statute. Howsoever broad the rule in a state may be, the rule that service of process to be valid must be on an agent who can be said fairly to represent the foreign corporation in the state may be deemed settled in the courts of the United States. St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Conn. Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Peterson v. Railroad Co., 205 U. S. 390, 27 Sup. Ct. 513, 51 L. Ed. 841. The service made was sufficient even under this rule.

[5] (1) Service upon Brown, the local manager, was service on an agent who fairly represented the corporation in Michigan. He was held out by the defendant as its representative; was put in charge of its local office, resided in the county; was described by it on its stationery and on its office door as its manager. He says he was practically a general agent for the company's business in Michigan. His duties and status were such that he is fairly to be deemed a representative of the defendant in the state rather than a mere subordinate employé. That he may not have had express authority to accept service is not material. Commercial Mut. Co. v. Davis, 213 U. S. 255, 29 Sup. Ct. 445, 53 L. Ed. 782. My conclusion, if sound, results in holding that the company was bound by the service on Brown. See Board of Trade v. Hammond Co., 198 U. S. 424, 25 Sup. Ct. 740, 49 L. Ed. 1111.

[6] (2) The service on Davis must also be held binding on the corporation. Davis was here on the corporate business. He came on that business frequently, if not regularly. His presence can hardly be said to be casual. He was the head of an independent department of the corporate business, and the man in its employ highest in authority of those who came on its affairs frequently into the state. His own testimony and that of the president leaves no doubt of his large authority in all matters relative to selling the corporation's product, not only in Michigan, but elsewhere. He was an agent upon whom service could properly be made because while in Michigan he represented, with authority, the corporation in the selling department of its business. Conn. Mut. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569.

[7] Fourth. After the conclusion of the arguments, counsel, by request, submitted in writing their views upon the application to this cause of the doctrine announced in Macon Grocery Co. v. Atlantic, etc., R. R. Co., 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300. That case was a bill in equity brought in the Circuit Court of the United States for one of the districts of Georgia by citizens of Georgia against various railroad companies doing business in Georgia, each of which was organized under the law of some other state than Georgia. The action was brought to enforce rights alleged to accrue to complainants under the laws of the United States, namely, Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), and the act of 1890, under the latter of which the action at bar is brought. In view of the language of the judiciary act of 1875 as amended in 1887 (Act March 3, 1887, c. 373, 24 Stat. 552 [U. S. Comp. St. 1901, p. 587]) and corrected in 1888 (Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 587]) the court held that the action would not lie in Georgia against the defendants for the reason that jurisdiction was not wholly based on diverse citizenship. In the case at bar there is diverse citizenship between the complainant and the defendant. The action is brought in the district of which the complainant is an inhabitant. But jurisdiction is not based on diverse citizenship alone, if at all. It is based on the right conferred on plaintiff by Act July 2, 1890. The case in this regard is like the Macon Grocery Case, and the question whether that case governs this is fairly presented. No case is pointed out in which this question has been actually and necessarily decided. It has been several times held by federal courts in well-considered cases that section 4 of the act of 1890 confers power only on the United States, and not on private individuals, to take proceedings in equity to restrain unlawful combinations. No other section gives expressly a right to relief in equity. The Supreme Court in the Macon Grocery Case does not base its decision upon any lack of power in the complainants to file the bill.

Attention in the litigation seems to have been given to the interstate commerce act rather than to the act of 1890. The former act contains no provision like that in section 7 of the act of 1890, and a controversy under it would doubtless be governed by the act of 1888. Whether or not the decision is to be deemed by implication to uphold

the right of individuals, acting under the act of 1890, to restrain by equitable proceedings an unlawful combination and to settle the venue of such proceedings, the question remains whether the decision controls an action at law brought under section 7 of the act in question.

In the Macon Grocery Case there was no allusion to section 7, nor was the action one at law for the recovery of damages. That section confers no express right to file a bill, but does confer expressly a right to sue for damages wherever the defendant "resides or is found." The act of 1890 was passed some two years after the act under consideration in the Macon Grocery Case, and it may properly be assumed with the language of that act in mind. The seventh section of the act of 1890 does not by its phrasing suggest that Congress intended an action to be brought where the defendant was "found" only when diverse citizenship did not exist between the parties. I am not satisfied that the rule in the Macon Grocery Case applies to an action at law under section 7, even if the plaintiff and the defendant are inhabitants of different states, nor that the Macon Case holds that the action must be brought in the state of which the defendant is an inhabitant, notwithstanding it may be "found" in the state of plaintiff's residence. My view finds support in the language used by the court in the course of argument in Ware Tobacco Co. v. American Tobacco Co. (C. C.) 178 Fed. 120.

In the absence of some clear decision to the contrary, my conclusion is that this action at law should not be dismissed merely because there is diverse citizenship between the parties.

From these conclusions, it follows that the motion to set aside service of process upon the defendants must be denied.