## SAM'L KILGORE ET AL. v. R. T. SMITH ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF YORK COUNTY.

Argued May 18, 1888—Decided October 1, 1888.

1. A foreign corporation organized to act as the general agent of its members in the sale of canned goods produced by them, and having and employing no capital in this state, is not subject to the provisions of the act of April 22, 1874, P. L. 108, requiring a statement showing its title and object, the location of its offices and the names of its agents within the state.
2. In an action of replevin for goods purchased in good faith from such corporation by the plaintiff, he is not affected by the provisions of said act, and, if he were, the defendant, being a member of the coporation, would be estopped from setting up the statute as a defence.
3. Nor may the defendant in such action, holding the goods subject to the control and order of the corporation, set off against the plaintiff's recovery a large indebtedness of the corporation to him for the goods in dispute.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 422 January Term 1888, Sup. Ct.; court below, No. 13 April Term 1885, C. P.

On April 10, 1885, an action of replevin was instituted by Robert Tynes Smith and William Wicks, trading as Smith & Wicks, against Samuel Kilgore, Samuel Kilgore & Co. and the Harford Transportation Co., for 1,103 cases of canned tomatoes and 900 cases of canned corn, of the value of $3,004.50. The return to the writ showed that Samuel Kilgore, on behalf of Samuel Kilgore & Co., claimed title to the goods and filed a bond duly executed; as to the Harford Transportation Co. the writ was returned n. e. i. The defendants served pleaded, non cepit and property.

At the trial on March 8, 1888, the material facts were as follows:

On February 17, 1883, the Northern Harford Packing Association was incorporated under the laws of Maryland, with the

object and purpose of the packing, canning and sale of canned goods. The members of the association were persons and firms in the counties of Maryland and the adjoining counties of Pennsylvania, engaged in the canning of goods. Samuel Kilgore & Co. as a firm, became a member in Maryland on March 2, 1883.

By the articles of association a separate account was to be kept with each member in which were to be entered all goods delivered by the member to the association for sale, and all supplies furnished by the association to the member, etc.; and it was provided that "No member of the company shall at any time or place pack any goods which shall not be under the control of the board of directors of this company;" that "all goods packed by the members of this company shall be subject to the control of the board of directors of this company and for sale in such manner as they may deem proper;" that at a stated time each year the directors of the association were to ascertain the average price obtained for canned goods sold by it, and then the value at such price of goods furnished by each member, when the association should pay to the member 90 per cent of the amount so ascertained, first deducting the cost of all material supplied.

In January 1885, the association became involved in a large indebtedness, among others, to Smith & Wicks, dealers in canned goods in Baltimore; and on January 6th, at a meeting of the directors at Delta, a Pennsylvania town on the Maryland line, a sale of all the goods of the association in bulk was authorized, and on January 10th, the association sold to Smith & Wicks by written contract, at 75 cts. per dozen, the entire lot of three pound tomatoes, Red Seal brand, then held unsold by the association, and embracing certain of the goods in dispute; and on January 31st, another sale was made by written contract to the plaintiffs of 100,000 cases of Red Seal corn, at 70 cts. per dozen, embracing others of the goods in dispute.

About the time of these purchases Smith & Wicks caused certain warehouses, where goods were stored, to be leased to third persons, and warehouse receipts to be issued for the goods; thus were the two warehouses of Samuel Kilgore & Co., in York county, leased to the Harford Transportation Co., also a Maryland corporation, which issued warehouse receipts for the goods stored therein, embracing the goods in dispute.

Neither the Northern Harford Packing Association, nor the Harford Transportation Co., had filed in the office of the secretary of the commonwealth the statement, showing the title and object of the corporation, the location of its office or offices in Pennsylvania, and the name or names of its authorized agent or agents therein, in compliance with the provisions of the act of April 22, 1874, P. L. 108. A part of the business of The Northern Harford Packing Association was transacted at Delta, York Co. After the contracts of sale to Smith & Wicks referred to, some of the goods in the defendants' warehouses were shipped to Smith & Wicks, and no returns being received, further shipments were refused, when this suit was brought.

In the admission of the evidence of title, various bills of exception were sealed in favor of the defendants, but the questions raised were substantially those raised upon exceptions to the charge to the jury, GIBSON, P. J., which after reviewing the testimony proceeded:

If you believe these facts as shown by the plaintiffs' witnesses, the title to these canned goods replevied passed to Smith & Wicks, the plaintiffs, under the contract of sale, and they can recover in this case for the same, unless the defendants have a legal ground to resist the recovery.

The goods were identified by a mark, a trade mark, which they called the Red Seal brand, and they were also identified by the warehouse receipts which were procured from the Harford Transportation Company, 2900 cases of Red Seal corn at the canning house and building at the barn, and 1700 cases of Red Seal tomatoes in the building north of the barn.

[The defence is founded, first, upon the question of the right of a foreign corporation in this state. It is alleged that the Northern Harford Packing Association, through whom the plaintiffs obtained title, was a Maryland corporation; in other words, a foreign corporation, doing business in the state of Pennsylvania without having complied with the provisions of the act of assembly relating to foreign corporations doing business in this commonwealth. But the supply of materials to a foreign corporation for the purposes of this organization, and the purchase of such in this state, is not a doing of business within the meaning of the act of assembly. On the other

hand, the defendants were members of the Maryland corporation residing in the state of Pennsylvania. If this Maryland corporation did not comply with the act of assembly, the question of law remains, whether these defendants can set up such a defence against the title of the plaintiffs, when the defendants are members of the corporation and were subject to its articles and by-laws. "No member shall at any time or place pack any goods which shall not be under the control of the board of directors of this company." "All the goods packed by the members of this company shall be subject to the control of the board of directors of this company, and for sale in such manner as they deem proper."

In other words, whether a failure of the corporation to comply with the requirements of the act of assembly, and the prosecution of their business in the canning of goods in the state of Pennsylvania, and obtaining supplies for their trade from there, whether that is a doing of business within the state of Pennsylvania, within the meaning of the law which will render the contract of Smith & Wicks void. There seems to be nothing in the act of assembly, in my opinion, which will render such a contract void under the circumstances.] [10] Or, the question may be this: Whether the defendants, being resident in Pennsylvania, and manufacturing goods in Pennsylvania, under the terms of their association with the Maryland corporation, can avoid their own contract with the corporation, and thus render void the contract of the corporation with Smith & Wicks, and hold the goods against the plaintiffs in this writ. I must instruct you that they cannot do so and that the contract is not rendered void by the act of assembly. The defendants' own acts must estop them from such a defence.

The case is one of ordinary title and ownership, though between persons of different states. And if you believe the testimony of the plaintiffs as to the sale of these goods, the plaintiffs are entitled to the possession of them. The contract, under which the plaintiffs claim, was a Maryland contract, and if you believe the defendants held these materials or goods for the corporation and subject to its order, the fact of their being residents of Pennsylvania, and canning and packing their goods here, does not make void the contract between them and the Maryland corporation under the act of assembly, and they

cannot set up the act of assembly as a defence, and thus avoid their own acts which induced the purchase by the plaintiffs, and retain this property from the plaintiffs to whom they as a part of the Maryland corporation sold them.

But, the defendants set up another defence, namely, that in the transactions between them and the corporation in the business of furnishing supplies, the percentage on the same and the dividend declared by the corporation on a settlement of accounts between them are unpaid, alleging that the corporation is largely indebted to them, and the corporation then had no claim upon them. It is alleged that after the contract with Smith & Wicks for the sale of all the canned goods in their possession, it was ready to prove that the corporation did no further business except disposing of some of the articles in their possession, that no dividend was paid after that, and that they paid no debts in the neighborhood, and that they were insolvent. It is alleged that by reason of this indebtedness of the corporation to them and their insolvency, they are justified in retaining the goods and in making a defence against the plaintiffs' claim for these goods; that the plaintiffs, Smith & Wicks, could obtain no better title from the corporation, than the corporation itself had, and if the corporation under the circumstances had no claim upon them, the plaintiffs had none.

I must instruct you that this is not correct. There can be no set-off in replevin, but if there is a charge or lien on the goods of the corporation, the defendants would be entitled to recoup the amount of that charge or lien against the plaintiffs' claim to that extent, subject to any claims on the part of the corporation. But whether there is such a charge or lien upon the goods in question, is to be determined by a consideration of the association of these defendants with the corporation. Article 13 of the by-laws provides that, "The board of directors of this company shall on the first day of December of each year ascertain the average price obtained by them for all canned goods sold by them prior to that date. . . . . And shall then pay to each member 90 per cent of the amount so ascertained as due him, first deducting therefrom the cost of all the materials, etc. . . . . And the board of directors shall retain in the treasury of the company 10 per cent of the sales of all canned goods sold," etc. By this it appears that on

stated occasions the value of the canned goods furnished by each member of the company was ascertained, and the member after it was ascertained was to receive 90 per cent of that amount and the association retained 10 per cent.

[After this sale to Smith & Wicks the defendants ascertained that the corporation was insolvent, and they retained the goods then in their possession on the ground that they could not be paid for the same, which meant of course this 90 per cent. But such an arrangement is subject to the claims of the creditors of the corporation. I use the language of a distinguished writer on corporations, which is appropriate : " It was a regulation looking to the internal affairs of the company, to the rights of the stockholders among each other. These things are, even if they are provided for in the charter, mere contracts among the stockholders for the regulation of their rights to each other. They are contracts too, which any stockholder has a right to insist upon, even against every other; but if there be a dealing with third persons in which the stockholders acquiesce, or which they confirmed, they cannot plead when called upon to comply with their contract that it was ultra vires. The defendants cannot, therefore, set up any failure on the part of the corporation to pay them the amount due by the corporation on this arrangement between themselves:" Morawetz on Corporations, § 676.] [11]

What I shall further instruct is contained in the plaintiffs' points :

1. That under all the evidence in this case the verdict of the jury should be for the plaintiffs, and the measure of damages to be found by the jury as stated by the court in its general charge.

Answer : This point is affirmed. The measure of damages which the plaintiffs are entitled to is correctly stated in the 8th point which I shall read to you.[12]

· 8. The measure of damages in this case, is the value of the 1103 cases of canned tomatoes, and the 900 cases of canned corn, mentioned in the sheriff's return to the writ issued in this case at the time of issuing the same, to wit : April 10, 1885, less one per cent on the value of the price of the tomatoes as mentioned in the contract of January 10, 1885, less the sum of $69.65 the value of the damaged goods, as testified to by Charles R. Mc-

Conkey, together with interest at the rate of six per cent per annum upon the balance from the date of the issuing of the writ, to wit: April 10, 1885, to this date.[13]

The jury returned a verdict "in favor of the plaintiffs for the sum of $3,104.67 damages and costs of suit." Judgment having been entered on the verdict, the defendants took this writ, assigning as error, inter alia:

10, 11. The parts of the charge embraced in [ ] [10] [11]

12, 13. The answers to the plaintiffs' points.[12] [13]

*Mr. J. W. Bittenger* and *Mr. H. L. Fisher*, for the plaintiffs in error:

1. "No foreign corporation shall do *any* business in this state without having one or more known places of business and an authorized agent or agents in the same upon whom process may be served:" Section 5, article XVI., Constitution. The first section of the act of April 22, 1874, P. L. 108, declares that "No foreign corporation shall do *any* business in this commonwealth, until said corporation shall have established an office or offices and appointed an agent or agents for the transaction of business therein." The second and third sections of the act make it a misdemeanor with severe penalties for any foreign corporation to do business in the commonwealth until it shall have filed in the office of the secretary of the commonwealth the statement required therein. The testimony shows that the Northern Harford Packing Association had an office at Delta, in York county, at which place nearly all of its business meetings were held, and that the goods in dispute were stored in the warehouses of the defendants in York county. The case of Thorne v. Insurance Co., 80 Pa. 15, virtually decides that such acts are within the terms of the act of 1874.

2. To render a contract void, it need not be contrary to the policy of the common law, but it is void if made in violation of a penal statute, though the statute contain no express prohibitory clause,—"the whole contract being tainted and nullified by the illegal act, so as to prevent the recovery of the debt in the country whose laws are violated:" Mitchell v. Smith, 1 Binn. 110; Maybin v. Coulon, 4 Y. 24; 4 Kent's Com. 466; Columbia Bank & Bridge Co. v. Haldeman, 7 W. & S. 233.

No private citizen can waive a right of the commonwealth: Holt v. Green, 73 Pa. 198; and a party to a contract in violation of a statute, cannot recover against the other party, though in pari delicto, and though such party may have received a full consideration: Reading Mfg. Co. v. Graeff, 64 Pa. 395; Allebach v. Godshalk, 116 Pa. 329.

3. While it is true, that strictly speaking there can be no set-off in actions of replevin, yet there are cases where certain equities on the part of the defendant are recognized and enforced: Fairman v. Fluck, 5 W. 516. In the case at bar the evidence was not only that the defendants had received no part of their 90 per cent of the average net receipts of the sale of the products, but that subsequent to the so-called sale of these particular goods, and before the defendants had been advised of the illegal character of the transactions on the part of the two foreign corporations, they had shipped to the plaintiffs a large part of their goods for which they had received no payment or returns whatever.

*Mr. B. Howard Hayman* (with him *Mr. Geo. S. Schmidt* and *Mr. Edw. Chapin*), for the defendants in error:

1. That its members, and among them the defendants in this case, are Pennsylvania stockholders in a foreign corporation, does not constitute a doing of business by a foreign corporation in this state. The acts done by the packing association are not within the purpose of the statute. One of the main objects of the law was probably to bring foreign corporations which put capital and extend their operations into this state, within the taxing power of the commonwealth. But after the defendants have profited by every one of the alleged irregular transactions of the association, they are estopped from setting up the claim advanced: Morawetz, Corp. § 353, 630.

2. If the defendants cannot defend upon the illegality of the transaction, à fortiori they would not be permitted to do so against a suit by an innocent third party: National Bank v. Whitney, 103 U. S. 99; National Bank v. Matthews, 98 U. S. 621; Winton v. Little, 94 Pa 64. The corporation itself could not defend on the ground that it had not complied with the provisions of the law: Hagerman v. Empire Slate Co., 97 Pa. 534; a member should come within the same principle. More-

over, it is impossible to connect the plaintiffs in this case in any way with any illegal transaction of the association, even assuming that any had existed.

3. If the corporation were insolvent, it is too clear for argument that the first duty of its directors was to sell its assets and pay its debts. The directors of a corporation are ordinarily trustees for the stockholders, but as soon as the corporation becomes insolvent, all the assets are impressed with a trust in favor of the creditors, and the directors must execute this trust: Morawetz, Corp., § 787. The proposition of the defendants to keep nine tenths of its assets in their hands needs no further reply.

OPINION, MR. JUSTICE PAXSON:

This was an action of replevin brought in the court below by the firm of Smith & Wicks against the defendants for 1103 cases of canned tomatoes and 900 cases of canned corn, of the value of $3,004.50. The plaintiffs claimed title through the Northern Harford Packing Association, a corporation chartered by the state of Maryland, for the manufacture and sale of canned goods. The defendants claimed, and it was the principal ground of their defence, that the title of the plaintiffs derived from the said company was defective for the reason that said company was a foreign corporation, doing business in this state, and had not complied with the provisions of the act of assembly relating to foreign corporations.

The defendants resided in York county, Pa., and were members of this corporation. Without going into a tedious detail of the business of said corporation, it may be stated that its members were to can their goods, and pack them, and hold them subject to the disposal of the corporation, which appears to have acted as a general agent for all its members in making sale of their commodities. On the 10th of January, 1885, a contract was entered into between the said corporation and Smith & Wicks (plaintiffs below), for the sale of all the canned goods then held by the association unsold at that time. A part of these goods were those held by the defendants, and which are the subject of this controversy.

There can be no doubt as to the title of the plaintiffs to the property in question, unless, as contended by the defendants,

the transactions of the corporation were ultra vires by reason of its non-compliance with the law of this state. This defence is made by a member of the corporation. The firm of Smith & Wicks do not set it up; they appear to have given a full consideration for their purchase, and as between them and the corporation there is no difficulty upon this point. Nor do the defendants appear to have regarded any portion of the transactions as ultra vires until it was seen that the arrangement was likely to prove unprofitable, and result in loss to themselves. It may be the latter circumstance sharpened their vision and enabled them to see what was concealed from them so long as the scheme held out alluring hopes for the future.

The learned judge below was of opinion, and so instructed the jury, that the corporation in question was not doing business in this state within the meaning of the act of assembly. In this we think he was entirely right. It has never been held that a citizen of Pennsylvania may not be a member of, or stockholder in, a corporation of another state, or that a contract between such member and his corporation is ultra vires, because the latter had not complied with the provisions of the act of assembly. Nor do we think it material that an occasional meeting of the directors was held at Delta, a town partly in Maryland and partly in this state. Their acts are not necessarily void for such reason: Morawetz on Corporations, § 533. One of the objects of the act of assembly was to bring corporations, employing their capital in this state and doing business here, within the taxing power of the commonwealth. It does not appear that this corporation brought any of its capital into this state. Its place of business was in Maryland. Its capital, if it had any, was there. It had contracts with some of its members, residing in Pennsylvania, by which they were to can their fruit and hold the same to be disposed of by the corporation. It was a kind of farmers' co-operative association, located in Maryland, with its membership in both states. It has ended in insolvency; hence this trouble.

In any view of the case, the plaintiffs have not been parties to any illegal transaction. The title to the goods in question was in the corporation under its by-laws, which were signed in Maryland. The defendants were Pennsylvania stockholders who assented to those by-laws. The title was therefore in the

corporation by the defendants' own act.   How then can they be heard to object to the plaintiffs' title after they had purchased the property in entire good faith, and given a full consideration therefor?   The defendants are estopped from setting up such a defence.   If there have been any irregular transactions on the part of the company, the defendants have participated therein and enjoyed the advantages thereof, and they cannot now set up their own wrong against good faith. parties, who, for anything that appears, were in entire ignorance of all these matters.

We see nothing in the numerous assignments of error which requires further discussion.

Judgment affirmed.