## Simon Harrold *v.* C. I. McDonald, Appellant.

*Contract—Abrogation of contract—Parol contract.*

In an action upon a parol contract which the plaintiff alleged had been made to take the place of a written contract which he alleged had been abrogated, a verdict and judgment for plaintiff will be sustained where the court properly submits the conflicting evidence to the jury, and charges as follows : " To set aside this contract and for the plaintiff to recover here, he must satisfy you by clear, precise and satisfactory evidence, and not only by clear, precise and satisfactory evidence, but he must do it by two witnesses, or one witness and facts and evidence that you think are equal to another witness on that very subject, on the abrogation of the contract, setting it aside and making a new one."

Argued Oct. 31, 1899.   Appeal, No. 161, Oct. T., 1899, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1898, No. 126, on verdict for plaintiff.   Before GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Assumpsit on a parol contract.   Before COLLIER, J.

At the trial it appeared that on July 8, 1896, the defendant entered into a written contract with the Butler & Pittsburg Railroad Company, whereby he was to construct, ready for the rails and rolling stock, its line of roadway from Butler, Pennsylvania, to the Allegheny river, near Tarentum, Pennsylvania, a distance of about thirty and one half miles.   The work was to be commenced within five days and completed within five and two thirds months, or on January 1, 1897.   The company was to pay defendant on the fifteenth of each month, ninety per cent of the estimate for the month preceding, and the balance upon the final completion of the whole work.   The company reserved the right to make any alterations necessary or desirable in the location, line, grade, plan, form or dimension

of the work, either before or after the commencement of the same.

On July 15, plaintiff wrote defendant the following letter:

"BEAVER FALLS, PA., July 15, 1896.

"MR. C. I. McDONALD:

"Dear Sir: In regard to the tunnels you have to build in your contract to construct the new Butler & Pittsburg Railroad, I will hereby agree to take a one-half interest with you in the construction of said tunnels. The price between us to be the same you contracted for with the railroad, share and share alike. And under like conditions and agreeable to the contract made by you with the railroad company, their plan and specifications.

"I will devote my time and attention to the work and take the control of same in construction, subject to our mutual interest.

"Very respectfully,

"SIMON HARROLD."

Under the terms stated in this letter, plaintiff commenced the work upon the tunnels, bought material, erected quarters for the men and made some excavations.

Subsequently the railroad company changed its plans, and substituted a cut for one of the tunnels. Plaintiff alleged that on August 16, the contract of July 15 was abrogated, and a parol contract was entered into in place of the written contract.

The terms of the alleged parol contract will appear from the charge of the court, which was in part as follows:

[Now, let us look at the evidence on that. Mr. Harrold says this—and you must watch carefully the words so that you may see what they mean—" On the 16th of August, I objected to the continuing of the contract, for the reason that the profitable part of the work was done away with, and that the hard part would not justify me in doing it, and protesting against one being taken away and putting me into the hard tunnel. In our further talk Mr. McDonald said this: That the best thing to do with that up there, was for me (that is for him), would be to let it out, subcontract it out, and that I should continue there, and he would try to get some one to take it off his hands; that he would do what was right with me." Now,

gentlemen, you will weigh that. What did he refer to, and what was referred to, when he said he would do what was right with him; to go on and do the work, and he would do what was right? Did he, himself, mean at that time that the contract was to be abrogated, or to do what was right when they came to settle up under this contract—because if it was to settle up under this contract, then the settlement must be under the partnership, and it cannot be in this case before you. They have a full remedy, under the partnership, to settle. Then, again, what did Mr. McDonald understand by it? Mr. McDonald says words like that were used, there is no dispute about that, but what did he understand by it? Did he understand when he had said that, that he had agreed to set aside his written contract and let him go on entirely new; or, did he understand what he says here, that he would do what was fair under this contract, in another manner to make it up? If that is what he understood, then their minds did not come together, and in a contract both minds must agree. They must both understand what they are doing. If you and I make a contract, you cannot put the words your way unless I understand it so too. Both minds must come together. The first question, then, is, What does this mean? When he said he would do what was fair, did he mean that those words were to set aside this written contract, or did he mean to do fairly by him when they came to settle up under the contract? It is a question that is not an easy one, but the law leaves it to you, and when the court leaves it to you, you must determine what that means. What was meant by the parties? Did the parties come together, and whether the words meant that this contract was to be set aside entirely, and a new one made to go on and pay him what it was worth irrespective of the contract they had entered into; or, did it mean to do fair under this contract when they came to settle up under it? If the latter is the case, the plaintiff cannot recover in this case, because the controversy must be settled under the partnership law of the state by a proceeding to settle up the partnership made under the contract.] [2]

The learned counsel for the plaintiff contends that these words, together with acts done afterwards and letters written, show that both parties understood that the contract was to be abrogated. That is for your consideration.

That is the contention, then, on the part of the plaintiff. He says that he ought to satisfy you, and has given evidence that should satisfy you; that he has given you one witness that it was to be abrogated, set aside and cleared out of the way, and a new agreement made, and that he has substantiated that by acts done and by letters written, that are as good as another witness. That he is bound to do. He is bound to give you two witnesses, one witness to the fact, and also bound to give you enough of other testimony to make up as good as another witness. Now, the one witness is the plaintiff, and if his evidence does not satisfy you that it referred to setting aside the contract, and that that was understood by Mr. McDonald, then he has not made out by the one witness, the positive witness, because the one witness must be that the language was understood by them both, that this written contract was set aside. I hope I have made that clear to you, because it is very important you should understand it before you set aside any written contract, particularly where, under that contract, the parties have their remedy. There is no harm done to them, because they have their remedy under the partnership settlement, whatever it is.

The defendant, on his side, denies that this contract was ever set aside. Mr. McDonald, the defendant, says that he did use words similar to what was said; that he would do what was fair. He says that is correct, and does not dispute it, but he says that he never, by any means, thought or pretended it should set aside the solemn written agreement, but it had reference to the settlement of the agreement when he would do what was fair, and it is alleged that they have letters and acts on their side to prove that.

Defendant's point and the answer thereto were as follows:

The evidence is not sufficient to show that the contract of July 15, 1896, was abrogated, and there can be no verdict for plaintiff. *Answer:* Refused. [1]

Verdict and judgment for plaintiff for $2,330.07. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*Samuel McClay,* with him *J. M. Swearingen,* for appellant, cited McGrann v. R. R. Co., 29 Pa. 82, Wilkinson v. Becker, 155 Pa. 194, and Hooks v. Forst, 165 Pa. 238.

*W. H. S. Thomson*, with him *Frank Thomson*, for appellee.

PER CURIAM, January 2, 1900 :

The disputed questions of fact which arose on the trial of this case were of such a character that the decision of them necessarily rested with the jury, and it would have been grave error to withdraw them with a binding instruction to find for the defendant. We think the facts were fairly submitted to the jury with a sufficient explanation to enable them to understand precisely the questions they were to dispose of. We see no error in the charge, and an examination of the testimony satisfies us that there was quite enough to sustain the verdict.

Judgment affirmed.