## C. J. HUEBEL CO. v. LEAPER.

(Circuit Court of Appeals, Sixth Circuit. July 11, 1911.)

No. 2,119.

**1.** SALES (§ 89*)—WRITTEN CONTRACT—SUBSEQUENT MODIFICATION.

Subsequent correspondence between the parties extending the time for performance of a written contract for the sale and delivery of posts and poles, the extensions being favorable to both parties, was admissible under the rule that parties having power to make a contract have equal power to agree on subsequent modifications thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252; Dec. Dig. § 89.*]

**2.** SALES (§ 388*)—CONTRACTS—BREACH—INSTRUCTIONS—DAMAGES.

In an action for breach of a contract for the sale of posts and poles, evidence and admissions *held* to justify an instruction that plaintiff was entitled to recover the difference between what he was able to obtain for the balance of the poles and posts which defendant refused to accept and the contract price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1108; Dec. Dig. § 388.*]

**3.** SALES (§ 372*)—PERFORMANCE—EXTENSION OF TIME—DELAY—DAMAGES.

Time of performance of a contract for the sale of posts and poles having been extended by agreement, defendant could not recoup damages for delay in plaintiff's performance against plaintiff's claim to recover damages for defendant's breach of contract.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 372.*]

**4.** SALES (§ 384*)—CONTRACT—BREACH—DAMAGES—ADDITIONAL WORK—TAXES—INTEREST.

In an action for the buyer's breach of a contract for the sale of posts and poles, plaintiff having "cut back" 681 poles at defendant's request, and having sold the balance of the contract quality after defendant had refused to receive any more, was properly permitted to recover the reasonable value of the cutting back, taxes paid on the poles after they were ready for delivery, and interest on the balance due after the date of the sale of the remainder of the contract quantity which defendant refused.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

**5.** SALES (§ 384*)—BREACH OF CONTRACT—DAMAGES.

Where plaintiff contracted to sell defendant certain posts and poles, and, after taking part of the contract quantity, defendant refused to accept any more, he was not entitled to recover the cost of clearing additional land which he held under a lease for the purpose of clearing and removing the timber therefrom, on the theory that it was necessary to provide space to store the posts and poles waiting defendant's directions to ship.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

**6.** SALES (§ 384*)—CONTRACT—BREACH—DAMAGES.

Where delays on both sides in the performance of a contract for the sale of posts and poles up to June 25, 1909, were agreed to on grounds satisfactory to both parties, and on June 30, 1909, plaintiff sold the balance of the material, on notice to defendant, because of defendant's breach of contract, plaintiff could not recover interest by way of damages prior to that date.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 384.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

188 F.—49

**7. APPEAL AND ERROR (§ 1140\*)—REVERSAL—DAMAGES—REMITTITUR.**

Where a judgment is erroneous only in the amounts of damages allowed, and the items for which plaintiff was not entitled to recover were clearly ascertainable, the Court of Appeals was authorized to affirm the judgment in case plaintiff would agree to remit an amount sufficient to cover the items for which he was not entitled to recover.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462–4478; Dec. Dig. § 1140.\*]

Knappen, Circuit Judge, dissenting in part.

In Error to the Circuit Court of the United States for the Western District of Michigan.

Action by Henry E. Leaper against C. J. Huebel Company. Judgment for plaintiff, and defendant brings error. Reversed in part.

M. J. Doyle, for plaintiff in error.

W. S. Hill (W. P. Belden, of counsel), for defendant in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. The defendant in error, Henry E. Leaper, whom we shall, for convenience, call the plaintiff, sued the C. J. Huebel Company (a corporation), which we shall call the defendant, for damages resulting from the alleged breach of a contract which was in writing, and the material parts of which are as follows:

"This agreement, made and entered into this twelfth day of January, 1907, by and between H. E. Leaper of Green Bay, county of Brown, state of Wisconsin, party of the first part, and C. J. Huebel Co., of Menominee, Michigan, party of the second part, witnesseth:

"That for and in consideration of the moneys to be paid, and the conditions to be performed by the party of the second part, hereinafter set forth, party of the first part hereby agrees to sell and deliver to said party of second part all the cedar poles and posts that he may have during the winter 1906 and 1907 estimated at about seven thousand poles and twenty thousand posts. * * *

"Party of the first part hereby agrees to deliver said material on cars of the Soo Line as may be directed by parties of the second part from time to time, parties of the second part agree to move all the said poles and posts by July 20, 1907, and party of the second part agrees to inspect the same from time to time when so delivered, in quantities of not less than ——— per cent. of the whole amount, said inspection to be final, and upon such inspection and marking of said material by said party of the second part, the same shall become the property of the said party of the second part, and they shall pay therefor in the manner hereinafter provided. Party of the first part agrees to pay for any labor necessary in handling said material for inspection.

"In consideration of the sale and delivery by said first party to said second party, of the material specified in this agreement, the said second party hereby agrees to pay therefor when delivered according to contract, the parties for themselves, their heirs and assigns agree as follows, to wit: * * *

"Terms of payment: Two thousand dollars on the signing of this contract, two thousand April 15th, two thousand June 1st, four thousand July 1st and balance July 20, 1907, and any moneys advanced to said first party shall become a lien on all material intended under this contract, and the same to be deducted from the proceeds of first materials delivered."

Omitting certain averments of the declaration, which were not pressed at the trial, the plaintiff, in stating his cause of action, averred:

"That during the winter of 1906 and 1907, as contemplated as aforesaid, he did cut and manufacture and had ready for delivery to the said defendant, at the time and times and places contemplated by said contract, the full amount of, to wit, 7,000 cedar poles and 20,000 cedar posts, all of which conformed in every respect to the specifications thereof, as set forth in said contract.

"And the plaintiff alleges that, at the time of the execution of the contract aforesaid, it was contemplated, understood, and agreed between the parties thereto that the poles and posts so to be gotten out and delivered to the said defendant should be delivered upon cars at the millyard of said plaintiff in said county of Alger in said district, upon a railroad track to be built connecting the Minneapolis, St. Paul & Sault Ste. Marie Railway with said millyards, and to be completed on or about the 1st day of June thereafter; that, by an understanding and agreement between the parties to said contract, the time for the completion of said railroad track was extended to, and said railroad track was completed on, to wit, July 1st thereafter; that it was the duty of the said defendant to direct from time to time the delivery of said poles and posts upon cars at the said millyard of the plaintiff on or before the 20th day of July, A. D. 1907, or within a reasonable time, to wit, one month, thereafter. Yet the said defendant, notwithstanding his duty as aforesaid, did not so order and direct the delivery of said poles and posts as aforesaid within the time as aforesaid, and afterwards did only order and direct the delivery of a portion of said poles and posts as aforesaid, to wit, 3,000 of said poles and 10,000 of said posts, and on, to wit, the 1st day of July, A. D. 1909, refused and still does refuse to direct and order the delivery of the balance thereof.

"And the said plaintiff alleges that on, to wit, the 1st day of July, A. D. 1909, the said defendant still refusing and neglecting to direct and order the delivery of said balance of cedar poles and posts as aforesaid, the said plaintiff did elect to hold the said contract forfeited and did offer the said poles and posts for sale of all of which the said defendant was notified and informed, and did sell said balance of said poles and posts at the highest market price obtainable therefor, and did receive for said posts and poles a large sum of money, to wit, $2,000. And the said plaintiff alleges that there was then due him and unpaid under the said contract from said defendant the full and complete sum of $4,400; and that by reason of the premises the said plaintiff has lost and been deprived of a large sum of money, to wit, $2,400, which said sum the said defendant did undertake and agree to pay to him, the said plaintiff, upon request. Yet the said defendant, although often requested so to do, has not paid the said sum, or any part thereof, to the damage of the plaintiff of $4,000."

The plaintiff also gave notice of the particulars of his claims, the details of which appear in the record but need not be stated here.

After demanding a trial of the matters set forth in the declaration, the defendant filed notice of its defenses, which, in substance, were: First, that the plaintiff had been paid in full; and, second, that it had upon its part performed all the stipulations of the agreement, but that the plaintiff had not done so, and that by his failure to do so the defendant had been damaged in the sum of $10,000.

Upon the issues thus made the case went to trial before a jury and resulted in a verdict for the plaintiff for $2,613.70. Exceptions were taken to certain rulings of the court in respect to the admission of testimony and also in respect to certain phases of the charge to the jury. Many errors are assigned upon the rulings referred to, but we shall only notice such as seem to be material.

[1] 1. The testimony for the plaintiff tended to show that by the mutual agreement of the parties the time for performing certain stipulations of the contract was extended. The defendant objected that there was no averment in the declaration to authorize admission of

testimony to establish the fact of an extension of time; but, while that pleading is not entirely specific, the court is of opinion that it is sufficient to authorize the admission of the testimony objected to. That testimony consisted mainly of a written correspondence between the parties, which occurred after the execution of the contract. While what takes place before its execution may be merged in a written contract, we know of no principle of law which would prevent the parties to an agreement from afterwards modifying or changing its terms. They have the same right to change their agreement that they had to make it originally. Citation of authority is not needed upon the proposition, but we may refer to Teal v. Bilby, 123 U. S. 578, 8 Sup. Ct. 239, 31 L. Ed. 263.

If the correspondence which was had after the contract was made tended to show that its terms had been changed to better suit both of the parties, it was competent and admissible as evidence. The importance of this testimony may be indicated by stating the respects in which the written contract was changed by the parties and their reasons for it, though their reasons may not be very material, if in fact the changes were made. The plaintiff had agreed to deliver the poles and posts on cars of the railroad known as the Soo Line, but the mill of the plaintiff was located several miles distant from it. The poles and posts were gotten out in winter and accumulated at the mill, and could only be delivered on cars of the railroad during the warm months. In order to get them on the cars of the Soo Line, a branch track had to be laid from the railroad to plaintiff's mill, and it was supposed when the contract was made that this branch line could be completed before midsummer and in time for delivery and removal of the lumber within the time stipulated in the contract; but the completion of the track was delayed, and the cars could not be gotten to the mill, nor was it practical to wagon the poles and posts to the railroad. It was in reference to this situation that the correspondence took place, and we think it was not error to permit it to be read as evidence. It might also be observed that it may not have been very prejudicial to the defendant to have the correspondence read, as possibly the modifications thereby made in the contract were quite beneficial to it as well as to the plaintiff. And it may be added that in view of the nature of the correspondence it is scarcely possible that defendant could have been prejudiced by an amendment of the declaration and a proceeding with the trial thereunder. There was no suggestion that all the correspondence or other evidence on the subject was not immediately available. The Michigan practice is liberal in permitting amendments when prejudice will not result, and such amendment would clearly have been within the discretion of the trial judge. There was surely no greater prejudice in admitting the testimony without amendment than if it had been admitted under amendment.

[2] 2. In writing, under date of June 25, 1909, the plaintiff gave notice to the defendant that unless the balance due him was paid he intended, on June 30th, to sell the poles remaining in his yards, and to hold the defendant liable in damages for the difference, if they did not bring enough to pay the balance due under the contract. The sale was accordingly made, and, after deducting the price obtained, 'a

balance was left of $1,911.05. This sum was part of several amounts which made up the verdict of the jury for $2,613.70.

It appears from the record that in the course of the trial the defendant's counsel, Mr. Doyle, made the following statement to the court and jury:

"The defendant concedes that on the 1st day of July, 1909, there was remaining in the plaintiff's millyard of the Huebel 1,907 stock poles and posts which at the prices named in the contract would amount to $4,616.54, and that said stock was on that day sold by the plaintiff for the sum of $2,705.49 and that said sum was the best price then obtainable therefor, and that, if the plaintiff is entitled to recover anything in this suit, he is entitled to recover the difference between those sums. The defendant further concedes that there were 681 poles cut back at the request of the defendant."

The same counsel in his brief here says:

"There is no controversy as to number, quality, or price. On June 30, 1909, Leaper declared the contract broken by Huebel and sold the poles then remaining in his yard for a sum $1,911.05 less than the contract price. It is agreed by both parties that such was the best price obtainable at the date of sale."

[3] Upon the statement of counsel made at the trial, and upon the written correspondence admitted as testimony, we think the learned judge who tried the case was entirely right in charging the jury that the correspondence by its terms constituted an agreement to extend the time of performance of certain stipulations in the original contract, and that as there remained due on the contract price of the poles, after selling those sold under the notice of June 25th, a balance of $1,911.05, the plaintiff was entitled to recover that much of his claim. It seems to the court that the facts admitted of no other conclusion. Besides, the time of performance having been extended by agreement, the right of recoupment for alleged damages during such delay falls to the ground.

[4] 3. Other items were embraced in the bill of particulars, two of which, namely, one for $34.05, for "cutting back" 681 poles, and another for $41.76 for certain taxes paid on the poles, do not seem to be disputed. Both of these items were also included in the verdict, and there can be no doubt of the propriety of this action.

4. Another item claimed by the plaintiff and included in the verdict was for $130.61 which covered interest on the balance due plaintiff from July 1, 1909 (the day after the sale of the poles) to the date of the trial. We see no reason for supposing that this was not a proper element of damages if the jury chose to include it, and we think there was no error in the allowance of this item. Moreover, we find no assignment of error aimed at its allowance.

[5] 5. The plaintiff, in his bill of particulars, stated one item of the damages he claimed, in this language, "To expense of clearing land to store material, $200," and $150 of this sum was allowed by the jury and included in their verdict. The facts upon which this claim was based appear to be that the plaintiff having gotten the poles upon his yards at the mill, and the same not having been taken by the defendant, the plaintiff cut the timber off a part of the land contiguous to his millyard, so as to make room for the convenient care of the poles and possibly for the more convenient handling of his business gen-

erally. The land so cleared was part of that held by the plaintiff under a lease providing, among other things, for cutting and removing the timber therefrom. The court below submitted this item to the jury with the result stated. While a charge for storage might, under some circumstances, be a proper item of damage, we have reached the conclusion that the expense of "clearing the land" was not, as such, a proper element of any damage sustained by the plaintiff. There was nothing in the contract between the parties nor in the correspondence by which it was modified that seems to the court to authorize the conclusion that the expense of "clearing" additional land, even for enlarging plaintiff's facilities for taking care of the poles, was within the contemplation of the parties when they made their contract or when they modified it. Besides, the removal and sale of the timber from the land cleared was one of the plaintiff's objects in leasing it, and non constat that the increase of yard facilities was not permanently advantageous to the plaintiff and his business. This element of damage was, therefore, as we think, too remote, and in submitting it to the jury the court erred.

[6] 6. The court at the trial also submitted to the jury the question of allowing interest on the claim of plaintiff from January 1, 1908, to July 1, 1909, and to the extent of $346.23 the jury allowed it and included it in their verdict. Up to June 25, 1909, when the notice of the sale was given, the delays upon the one side and the other in the performance of the stipulations of the contract were by mutual consent and for reasons which are stated in the correspondence—reasons which sometimes favored one side and sometimes the other, and the delays apparently resulted as much to the advantage of one party as to the other. At any rate, the delays were agreed to upon grounds which we may assume were satisfactory to the parties, and in these circumstances we cannot perceive that the plaintiff was entitled to damages by way of interest for any part of the time previous to June 30, 1909. In submitting this item to the jury we think there was error.

7. In short, the court is of opinion that in the verdict there were properly included the items of $1,911.05, $130.61, $34.05, and $41.76, which make up a total of $2,117.47. To that extent the verdict and judgment were proper, but it was excessive and erroneous to the extent of $496.23, made up, as we have indicated, of the items of $150 and $346.23.

[7] The judgment must be reversed, with costs, and with directions to the court below to grant the defendant a new trial of the action unless the plaintiff shall, within 30 days from the entry of this judgment, file in this court a consent to remit, from the judgment heretofore entered by it, the sum of $496.23. That this practice is warranted by the authorities is shown by the following decisions: Tefft v. Stern, 73 Fed. 591, 21 C. C. A. 67; Tefft v. Stern, 74 Fed. 755, 21 C. C. A. 73; American Nat. Bank v. Williams, 101 Fed. 943, 42 C. C. A. 101; Farrar v. Wheeler, 145 Fed. 482, 75 C. C. A. 386.

If that reduction is thus made by the plaintiff and entered of record, new trial will be denied, and the judgment will be affirmed.

As the errors to its prejudice were substantial ones, the court is of opinion that the defendant, the C. J. Huebel Company, should recover its costs on this writ of error.

KNAPPEN, Circuit Judge. I concur in the foregoing opinion of Judge EVANS, except that I think the question of interest discussed in subdivision 6 of the opinion was properly submitted to the jury, and that the item of taxes rests upon the same basis as the interest allowance.