### IRWIN GLASS CO. v. BUCHANAN et al.

(Circuit Court of Appeals, Third Circuit. May 5, 1923.)

No. 2951.

**1. Corporations ☞448(1)—Corporation held real party to contract made in its behalf before organization.**

Where a corporation made a contract, not personally, but as "trustee" for a corporation to be organized, the corporation, when it was organized and entered upon performance, became the real party to the contract, and was bound by its covenants and entitled to sue for its breach, without joining the trustee who made it.

**2. Evidence ☞445(1)—Evidence of subsequent modification of contract by parol held admissible in action at law thereon.**

In an action at law on a written contract made on behalf of a corporation to be organized under the laws of Pennsylvania, evidence that by subsequent parol agreement the corporation was permitted instead to organize under the laws of Delaware, and that plaintiff was that corporation, *held* admissible, where such modification was put in issue by the pleadings.

**3. Corporations ☞661(2)—Foreign corporation held entitled under the law of Pennsylvania to maintain action for breach of contract to convey real estate.**

A foreign corporation organized for the manufacture of glass, *held*, under the law of Pennsylvania, entitled to maintain an action for breach of a contract for conveyance to it of real property, where prior to such breach it had registered under the law of the state and was vested with the right to hold real property and where the only business done prior to registration was preliminary to its intended manufacturing.

In Error to the District Court of the United States for the Western District of Pennsylvania; Joseph Buffington, Judge.

Action at law by the Irwin Glass Company against W. O. Buchanan and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

George R. Wallace and Wallace & Patterson, all of Pittsburgh, Pa., for plaintiff in error.

Paul H. Gaither, Gaither, Portser & McConnell, and Smith, Best & Horn, all of Greensburg, Pa., for defendants in error.

Before WOOLLEY and DAVIS, Circuit Judges, and McKEEHAN, District Judge.

WOOLLEY, Circuit Judge. This action is on a contract made in July, 1917, between William M. Anderson, of Pittsburgh, Pennsylvania, "not personally, but as trustee for Irwin Glass Company, * * * a corporation to be organized under the laws of the State of Pennsylvania," party of the first part; Irwin Board of Trade, an unincorporated voluntary association of citizens of Irwin, Pennsylvania, party of the second part; and a number of individuals, mainly citizens of the Borough of Irwin, parties of the third part. The purpose of the contract was, as its personnel denotes, the establishment of a local industry. Anderson represented financial interests who undertook to furnish capital, organize a corporation, and, through it, to build and operate a glass plant. To bring this about, the Board of Trade promised to give and caused to be conveyed to the corporation when organized a certain tract of land on which to build the plant, and the score or more individual parties became guarantors of the obligation of the Board of Trade. By the main provisions of the contract the glass company was required, without waiting for the conveyance of the land, to contract for materials for the erection of the plant, and, after acquiring the premises, to erect and operate the plant, and the Board of Trade was required to deliver in escrow a deed for the property to a local bank by a named day.

Passing from the contract to the suit, the Irwin Glass Company, a corporation organized under the laws of the State of Delaware, brought this action on the contract, first reciting in its statement of claim the terms of the contract which provided for a corporation to be organized under the laws of the State of Pennsylvania, and then averring that pursuant to a change in the contract later made by the parties, the proposed corporation was organized under the laws of the State of Delaware, and that it, the plaintiff, is the corporation so organized. At the trial the plaintiff introduced testimony in substance as follows: The change of the domicile of the proposed corporation from that of Pennsylvania to that of Delaware was made to save organization expenses, and thereafter the defendants dealt with the Delaware corporation as the one contemplated by the contract. In the matter of the conveyance a difficulty arose from the fact that underlying the tract of land on which the glass plant was to be erected there was a vein of coal and the coal company owning the land refused to make a conveyance which did not reserve to itself the right to mine the coal. A surface subsidence would, of course, ruin a glass plant. The glass company, however, was willing to accept any title whereunder it could safely install the heavy foundations for glass tanks and furnaces, and to that end it joined the defendants in an effort covering several months to secure a title which would satisfactorily meet the requirements. All the while the glass company had been contracting for materials for the erection of the plant, and, relying upon the contract, had expended

large sums of money. When it appeared that the enterprise had fallen through, the glass company—the Delaware corporation—registered in the State of Pennsylvania under the laws of that state with reference to foreign corporations, and demanded of the defendants a conveyance of the land pursuant to their undertaking.

Upon their failure to respond, the plaintiff brought this action for breach of contract, giving in evidence the story we have outlined. Toward the end of its case, the plaintiff, in order to show its right to bring and maintain the action, made an offer to prove that the parties had, subsequent to its execution, changed or modified the contract by agreeing that the corporation proposed by its terms should be one organized under the laws of the State of Delaware instead of one organized under the laws of the State of Pennsylvania. This offer was opposed by the defendants on several grounds: First, because Anderson, as trustee of the proposed Pennsylvania corporation, a necessary party to the action, was not named a party plaintiff (if named, being a citizen of Pennsylvania, the diversity of citizenship necessary to invoke the jurisdiction of the court would be lost); second, because the change in the contract involved a reformation of the contract or was a novation, neither of which, it was contended, can be proved or tried in an action at law but can be established only by a bill in equity; and third, because all the damages for which the plaintiff seeks to recover in this action were incurred prior to the date of its registration as a foreign corporation under the laws of Pennsylvania, a time at which the plaintiff first became authorized under the laws of that state to accept and hold the real property in question. The learned trial judge sustained the objection to the plaintiff's offer and on the defendants' motion entered judgment of nonsuit. On a motion for a new trial he declined to take off the nonsuit, holding as the one ground for his action that the plaintiff could not prove the subsequent change or modification of the contract in an action at law, but, regarding the contract as one calling for reformation, he left the plaintiff to its action in equity. The case is here on the plaintiff's writ of error.

As a writ of error is directed to the judgment of a court, not to the reasons for its entry (Clinton M. & M. Co. v. Cochran, 247 Fed. 449, 159 C. C. A. 503), we are required to determine whether the judgment is valid, so far as that can be done under this writ of error. We shall, accordingly, consider all the grounds on which the defendants based their motion.

[1] On the first question we are of opinion that Anderson was not an indispensable party to the suit. He was trustee under a dry trust, or, at least, under a trust that became dry as soon as the corporation contemplated by the contract came into existence. Thereafter the corporation took up the work which by the terms of the contract it was intended to perform. It became the actor, the real party of the first part. Covenants in the contract made to be performed by the corporation when created, as well as covenants made by others in its behalf, ran to and from the several parties, carrying their respective rights and liabilities. Among these is the right of the plaintiff to sue for a breach of a covenant made for its benefit—if, indeed, it is

the corporation named in the contract.   Commonwealth Steamship Co. v. American Shipbuilding Co. (D. C.) 197 Fed. 780; Id. (C. C. A.) 215 Fed. 297.   This is the second question.

[2] This question grew out of the plaintiff's previously mentioned offer to prove, in support of an averment in its statement of claim, that the parties had by express oral agreement, confirmed by subsequent conduct, changed one term of the contract after its execution by providing that the proposed corporation should be organized under the laws of Delaware instead of under the laws of Pennsylvania.   The defendants had traversed this averment of fact in their affidavit of defense and thereby had clearly raised an issue of fact.   This issue of fact, however, the defendants maintained was not triable by a jury in an action at law but must first be determined by a suit in equity.

The difficulty in this question, we think, arose out of a rather free use of legal terms with different meanings, as is indicated by the proposition framed by the defendants as follows:

"When such change, alteration, substitution, amendment, supplement, novation, or what not, is pleaded by the plaintiff and denied and not consented to by the defendants the plaintiff's first duty is to have his contract upon which he sues reformed by decree in equity, and then bring his action at law."

Obviously, a plaintiff is bound to proceed in equity only when, in order to prevail at law, he must first invoke some equitable relief.   If the contract sued upon is a mere "substitution" of the contract first entered into, he may, if the evidence is sufficient, recover upon it in an action at law without resort to a court of equity, Harrold v. McDonald, 194 Pa. 359, 45 Atl. 44; and so where the contract sued upon is a "supplement" to the contract entered into.   Prouty v. Kreamer, 199 Pa. 273, 49 Atl. 66.   Whether a contract involving a "change," "alteration," or "amendment" is such as can be recovered upon in an action at law without the aid of a court of equity depends on the character of the change, alteration, or amendment.   If, through error or mistake, the meaning of an instrument as written differs from the original intention of the parties, then before recovery can be had at law on the instrument as originally intended, a party must obtain its reformation in a court of equity.   But here there is no occasion to reform the contract because the plaintiff is not seeking to enforce it as it was originally drawn and intended.   It is seeking to enforce it as it was changed.   Nor is there involved here any question of novation, because the defendant debtors, instead of contracting a new obligation in favor of a new creditor by the order of the original creditor, simply agreed with the trustee, as it is claimed, to substitute one creditor for the other before either came into existence.   Griggs v. Day, 136 N. Y. 152, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 704.   Instead of setting up a new contract, the plaintiff endeavored to maintain the only contract in the case in all its terms save one and in that one it offered to prove a change or alteration.   If the change or alteration related to an oral agreement between the parties made before or at the time of the execution of the written contract, proof thereof would not be admissible, because it would vary the terms

of the contract into which all antecedent and concurrent oral agreements are considered to be merged. "But oral agreements subsequently made, * * * and before the breach of the contract, in cases falling with the general rules of the common law, and not within the statute of frauds, stand upon a different footing," said the Supreme Court in Emerson v. Slater, 22 How. 28, 16 L. Ed. 360. "Such * * * oral agreements, not falling within the exception mentioned, may have the effect to enlarge the time of performance specified in the contract, or may vary any other of its terms, or may waive and discharge it altogether." To the same effect the Circuit Court of Appeals for the Sixth Circuit, in Huebel v. Leaper, 188 Fed. 769, 772, 110 C. C. A. 475, 478, said:

"While what takes place before its execution may be merged in a written contract, we know of no principle of law which would prevent the parties to an agreement from afterwards modifying or changing its terms. They have the same right to change their agreement that they had to make it originally."

See American Fire Ins. Co. v. King Lumber Co., 250 U. S. 2, 39 Sup. Ct. 431, 63 L. Ed. 810; American Fine Art Co. v. Simon, 140 Fed. 529, 72 C. C. A. 45; Teal v. Bilby, 123 U. S. 572, 8 Sup. Ct. 239, 31 L. Ed. 263.

These principles of law apply, we think, to the case at bar, because the change or alteration here made was subsequent to the execution of the contract and did not extend to reforming the instrument or to making it conform to what was originally intended by the parties. It was a change which amounted to nothing more than a modification, such as almost always occurs in transactions of any size. In other words, it was an alteration by which one old element, affecting details, was cancelled and a new one substituted, leaving the general purpose and effect of the subject matter intact. 27 Cyc. 814.

By denying in their pleading the plaintiff's averment of a change or alteration in the contract, the defendants raised a true issue of fact, namely; which is the real contract, the writing changed or the writing unchanged. We think this issue was submissible to the jury and triable only by that forum. Szok v. Crown, 33 Pa. Super. Ct. R. 612, 614. We are of opinion, therefore, that in denying the plaintiff's offer to prove this fact the learned trial judge fell into error.

[3] The remaining ground urged by the defendants against the plaintiff's offer is based on the fact that the plaintiff did not register in Pennsylvania as a foreign corporation doing business in that state until July 2, 1918. The contention that the plaintiff cannot maintain this action because all the damages it seeks to recover were incurred before that date is answered by the fact that no damages were incurred before breach and the breach occurred after registration. The further contention that the plaintiff was doing business in Pennsylvania without having registered as a foreign corporation and was therefore without capacity to receive and own real property and was without right to maintain an action for damages for breach of a contract to convey real property is not so easily disposed of. This contention is controlled by the applicable laws of the State of Pennsylvania. These

laws seem to deal with two subjects: One, the right of a foreign corporation to hold real property in the state; and the other, its right to do business in the state without registering. As an exception to the general rule that a corporation has the power, and by comity the right, to acquire and hold real property in a state other than the one by which it was created, the State of Pennsylvania by Act of April 26, 1855 (Pa. St. 1920, § 2638)—yielding doubtless to the popular opinion of that period—declared against a foreign corporation holding real property within its boarders. The severity of this statute has been relieved from time to time by many acts permitting foreign corporations of certain classes to own real property in Pennsylvania, among them foreign corporations engaged in the manufacture of glass. Act of April 9, 1915 (P. L. 63). See Act of June 11, 1919 (P. L. 441; Pa. St. 1920, §§ 11065–11070). In none of these acts is there any reference to registration as a condition precedent to the ownership of real property. However, the Act of June 8, 1911, § 2 (P. L. 710; Pa. St. 1920, § 11055), following closely the provisions of the Constitution of 1874 (article 16, § 5), and the Act of April 22 of the same year, provides that:

"Every * * * foreign corporation, before doing business in this commonwealth, shall appoint, in writing, the secretary of the commonwealth and his successor in office to be its true and lawful attorney and authorized agent," etc.

This act contains no reference to the holding of real property by a foreign corporation. But Pennsylvania courts have held that a foreign corporation which, by reason of noncompliance with the act, has been doing business in the state illegally, cannot invoke the aid of the courts to enforce an obligation thus illegally contracted. While this subject has many aspects we think the one which concerns the question whether, in doing what the plaintiff did before registration, it was "doing business" in the State of Pennsylvania within the meaning of the act is the only one which calls for discussion.

The principal objects of the statute are to bring foreign corporations within the reach of legal process and to subject them to the taxing power of the state. Ice Company v. Armour, 12 Pa. Super. Ct. R. 443; Optical Co. v. Royal, 24 Pa. Super. Ct. R. 527; Putnay v. Edwards, 60 Pa. Sup. Ct. R. 338; Kilgore v. Smith, 122 Pa. 48, 15 Atl. 698. Violation of the statute turns on the fact of a foreign corporation "doing business" in the state within the meaning of that term. The courts of Pennsylvania have construed the term liberally. They have sustained transactions where the foreign corporation had not brought its capital into the state (Kilgore v. Smith, 122 Pa. 48, 15 Atl. 698; People's B. L. & S. Ass'n v. Berlin, 201 Pa. 1, 50 Atl. 308, 88 Am. St. Rep. 764), and have held that isolated transactions between foreign corporations and citizens of the state do not come within the prohibition of the statute. The tests they have applied to the words "doing business" are whether a foreign corporation shall have an agent in the State of Pennsylvania or shall have offices for the general conduct of its business in the state, or shall conduct its corporate business or shall have a part of its corporate capital in the state. Delaware v. Construction

289 F.—23

Co., 204 Pa. 22, 53 Atl. 533; People's B. L. & S. Ass'n v. Berlin, 201 Pa. 1, 50 Atl. 308, 88 Am. St. Rep. 764; Construction Co. v. Winton, 208 Pa. 467, 57 Atl. 955; Pavilion Co. v. Hamilton, 15 Pa. Super. Ct. 389. In other cases courts have held that where a foreign corporation has not engaged in its general business in the state but has done only those acts which are preliminary to the doing of business for which it was incorporated, such acts will not be regarded as illegal and for their enforcement the courts of the state are open. Pavilion Co. v. Hamilton, 15 Pa. Super. Ct. 389; Payson v. Withers, 5 Biss. 269, Fed. Cas. No. 10864; American Drug Co. v. Philadelphia, 15 Pa. Dist. R. 587. Such, we think, was the nature of the acts which the plaintiff corporation did in Pennsylvania before the date upon which it registered as a foreign corporation. It was not until it had registered that it made a formal demand for conveyance of the property under the contract in suit. When it made this formal demand it was, under any interpretation of the law, in a position to take title.

The defendants, in their brief, raise several other objections to the plaintiff's offer which they did not raise at the trial. As they were not presented to or passed upon by the trial judge and are not here on writ of error, we shall not review them. For the reasons given we are constrained to reverse the judgment below and remand the case for a new trial.